**DOLL AMIR & ELEY LLP**
HUNTER R. ELEY (SBN 224321)
heley@dollamir.com
CONNIE Y. TCHENG (SBN 228171)
ctcheng@dollamir.com
1888 Century Park East, Suite 1850
Los Angeles, California 90067
Tel: 310.557.9100
Fax: 310.557.9101

Attorneys for Defendant,
CAPITAL ONE, N.A.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILAN KUNWAR,<br><br>    Plaintiff,<br><br>v.<br><br>CAPITAL ONE, NATIONAL ASSOCIATION and EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendants. | Case No. 5:17-cv-04849-LHK<br><br>*Assigned to Hon. Lucy H. Koh; Referred to Magistrate Judge Nathanael M. Cousins*<br><br>**DEFENDANT CAPITAL ONE, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[*Supplemental Request For Judicial Notice filed concurrently herewith*]<br><br>Date:   December 7, 2017<br>Time:   1:30 p.m.<br>Place:  Courtroom 8 – 4th Floor<br>        280 South 1st Street<br>        San Jose, CA 95113<br><br>Complaint Filed:  July 18, 2017<br>Trial Date:       TBA |

Defendant Capital One, N.A. ("Capital One"), respectfully submits this Reply in support of its Motion to Dismiss the Complaint ("Motion").

## I. INTRODUCTION

Plaintiff bases his Complaint on the allegation that Capital One's credit reporting as to an unpaid credit card debt was inaccurate because Capital One had previously issued a Form 1099-C as to that debt. Plaintiff asserts that, once the 1099-C was issued, his debt was discharged, and Capital One therefore could not report an outstanding balance. Capital One's Motion demonstrated the flaw in Plaintiff's theory: For the relevant time period, creditors were required to issue a 1099-C under certain circumstances *even when they had not discharged the debt*. Specifically, creditors were required to issue a 1099-C after they had not received a payment toward the debt for 36 months; expiration of this "non-testing" period was an "identifiable event" that triggered a 1099-C reporting requirement. The IRS consistently and unambiguously has confirmed that this "identifiable event" is deemed a discharge *solely* for 1099-C reporting purposes; the IRS has even confirmed that a creditor may continue collection after issuance of a 1099-C due to expiration of the non-testing period. Thus, Plaintiff's debt was still outstanding after Capital One's issuance of a 1099-C, Capital One's reporting of the outstanding debt after issuance of the 1099-C was not inaccurate, and Plaintiff's claims should be dismissed.

Although Plaintiff's Opposition disagrees with Capital One's conclusion, it is clear that the parties agree on the allegations of this case and for which "identifiable event" Capital One issued a 1099-C as to Plaintiff's debt. Specifically, Plaintiff agrees that his contention of discharge is based solely on the 1099-C – he has not made and does not point to any allegations indicating, for example, that he paid the debt or that he reached some settlement arrangement with Capital One pursuant to which it agreed to forgive his debt. Further, he agrees that Capital One issued the 1099-C under "Code H," which is triggered after 36 months of non-payment. Plaintiff's sole point of disagreement is whether a 1099-C issued with "Code H" is *prima facie* evidence

1

DEFENDANT CAPITAL ONE, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

that a discharge has taken place.

In arguing that a 1099-C is *prima facie* evidence of a discharge, Plaintiff overlooks a small but crucial distinction: an "identifiable event" for purposes of a 1099-C is not equivalent to actual discharge. The IRS Information Letter and IRS guidance Plaintiff cites explain that expiration of the non-payment testing period (meaning non-payment for 36 months) is *prima facie* evidence of an "identifiable event," meaning that it is presumptive evidence that a 1099-C must issue – not that it is presumptive evidence that actual discharge has occurred. The creditor may rebut the presumption if it does not want to issue the 1099-C. Otherwise, both the federal regulation that requires 1099-Cs and IRS guidance both explicitly state that a 1099-C must issue upon expiration of the non-payment testing period "*whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable date has occurred.*" Thus, both federal regulations and the IRS are clear that a 1099-C may be required under Code H even if no actual discharge has occurred and the debt is still outstanding.

In arguing otherwise, Plaintiff omits portions of IRS Information Letters that clarify this distinction. Plaintiff also chides Capital One for citing *F.D.I.C v. Cashion* on the ground that it is a decision of the Fourth Circuit, rather than the Ninth Circuit (Plaintiff nonetheless cites a bankruptcy case out of the District of New Jersey). Plaintiff ignores that *Cashion* (and subsequent authority) acknowledge that the "majority" of courts to consider this issue have reached the same conclusion as Capital One. These cases support what federal regulations and the IRS already make clear: a 1099-C issued with Code H does *not* establish actual discharge. (Indeed, given that Code H is triggered upon non-payment after 36 months, it is likely that the majority of debts for which 1099-Cs issue with Code H do *not* involve actual discharge).

Because a 1099-C alone does not establish that a debt has been discharged (particularly if the 1099-C lists Code H), Plaintiff has failed to set forth sufficient

facts to demonstrate that Capital One reported any inaccurate information. For this reason, his claims must be dismissed.

## II. ARGUMENT

Capital One's Motion demonstrated, and Plaintiff's Opposition does not dispute, that in order to allege sufficiently his claims for violation of the Fair Credit Reporting Act ("FCRA") and California Credit Reporting Agencies Act ("CCRAA"), Plaintiff must allege facts demonstrating that Capital One reported inaccurate or misleading information. *See* Motion at 6-7, 12; *see generally*, Opp. Plaintiff's claims fail because the Complaint does not allege facts establishing inaccurate reporting.

### A. Federal Law And The IRS Are Clear That Forms 1099-C Were Required Under Code H Even Without Actual Discharge.

Plaintiff and Capital One both agree that 26 C.F.R. § 1.6050P-1 governs 1099-C Forms and that the IRS provides reliable guidance regarding the meaning and effect of 1099-Cs. *See* Motion at 7-8; Opp. at 4-6. To this end, Plaintiff acknowledges that Code H is listed on the 1099-C Capital One issued as to his debt (*see* Opp. at 4) and then turns to IRS Publication 4681 (Plaintiff errantly consults the current version, rather than the one in effect at the time Capital One's 1099-C issued[1]) and an IRS Information Letter for explanation. Plaintiff reaches a different conclusion from Capital One, however, because he conflates the "identifiable events" discussed in these authorities with actual discharge.

Plaintiff misinterprets these authorities. The federal regulation, explanatory IRS publication and IRS Information Letters explaining this regulation are uniformly clear that non-payment for 36 months gives rise to an "identifiable event" requiring a 1099-C, and they are also consistently clear that a 1099-C issues in response to this "identifiable event" *even in the absence of actual discharge.*

---

[1] As noted previously, 26 C.F.R. § 1.6050P-1 was revised effective November 2016. Following November 9, 2016, 26 C.F.R. § 1.6050P-1 no longer requires issuance of a 1099-C upon expiration of a non-payment testing period.

1. <u>26 C.F.R. § 1.6050P-1 Explicitly States That A 1099-C May Be Required Regardless Of Whether Actual Discharge Has Occurred.</u>

As set forth in the Motion, Section 1.6050P-1 in 2015 identified one triggering "identifiable event" as "expiration of the non-payment testing period" (26 C.F.R. § 1.6050P-1(b)(2)(i)(H)), which was further defined as non-payment on an indebtedness for a period of 36 months (26 C.F.R. § 1.6050P-1(B)(2)(iv)). Plainly, a debtor's decision not to pay a debt for three years is a wholly separate issue from whether the creditor has decided to cancel that debt. Thus, the regulation explicitly stated that the Form 1099-C must issue upon occurrence of an identifiable event, "**whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable date has occurred**." 26 C.F.R. § 1.6050P-1(a)(1) (emphasis added).

2. <u>IRS Publication 4681 Explicitly Stated That Expiration of Nonpayment Testing Period (Which Triggers A Code H 1099-C) Does Not Necessarily Result From Actual Discharge.</u>

The IRS was also clear on this point as it explicated Section 1.6050P-1. As Plaintiff points out, the IRS includes information in IRS Publication 4681 regarding 1099-C Forms. The version published for 2015, which thus applies to the 1099-C Capital One issued regarding Plaintiff's debt on December 31, 2015, includes the same broad statement to which Plaintiff points in the Opposition (*see* Opp. at 4, regarding version in effect August 2017), that it "generally refers to debt that is canceled, forgiven, or discharged for less than the full amount of the debt." Supplemental Request For Judicial Notice ("SRJN"), Ex. A, at 2. However, when specifically describing Code H, the IRS publication asserts that Code H is not only used where a debt has actually been canceled:

> Code H is used to indicate that the creditor hasn't received a payment on the debt during a testing period ending on December 31, 2015. The testing period is a 36-month period increased by the number of months the creditor was prevented from engaging in collection activity by a stay in bankruptcy or similar bar under state or local law. . . .

DOLL AMIR & ELEY LLP

> **Expiration of the nonpayment testing period doesn't necessarily result from an actual discharge of indebtedness.**

SRJN, Ex. A at 3.

### 3. IRS Information Letters Explain That A 1099-C Is Not Admission Of Discharge And Collection May Continue Following Issuance.

Plaintiff selectively cites IRS Information Letter 2005-0208 to argue (erroneously) that a 1099-C issued with Code H reflects a presumption of debt discharge that the creditor can rebut. Opp., at 5. This argument misstates the Information Letter and directly conflicts with IRS statements in this and another IRS Information Letter.

To begin with, IRS Information Letter 2005-0208 does not say that a 1099-C is *prima facie* evidence of discharge that a creditor can rebut. Rather, it explains that "[a]n organization can rebut the presumption that the non-payment testing period identifiable event occurred . . . ." IRS Info. 2005-0208, *2 (2005). Plaintiff's description is thus incorrect because (1) as the IRS Publication 4681 made clear, the non-payment testing period identifiable event is not the same as actual discharge of debt (*supra*, Section II.A.2) and (2) the creditor's ability to rebut thus relates to the identifiable event – *i.e.*, whether a 1099-C must issue – and not whether discharge has occurred.

Indeed, this same IRS Information Letter goes on to affirm that a creditor may continue collection activity after issuance of a 1099-C. This is because the "identifiable event" is deemed a discharge "solely for purposes of the reporting requirements of section 6050P of the Code":

> Q5. Does filing a Form 1099-C upon the occurrence of an identifiable event prohibit future collection activity on the amount reported?
>
> A5. Section 1.6050P-1(a)(1) of the regulations provides that **solely for purposes of the reporting requirements of section 6050P of the Code**, a discharge of indebtedness is deemed to have occurred upon the occurrence of an identifiable event **whether or not there is an actual discharge of indebtedness**. **Section 6050P and the regulations do not prohibit collection activity after a creditor reports by filing a Form 1099-C**.

IRS Info. 2005-0208 at *3 (emphasis added). The non-payment testing period applies "solely" to determine whether a 1099-C is required and should not be taken out of context to imply that a debt has been discharged. This point is only emphasized by the IRS' confirmation that a creditor is allowed to pursue collection after issuance of a 1099-C.

As raised in the Motion, the IRS also explicitly clarified this point in another Information Letter. Specifically, a creditor sought guidance from the IRS out of its concern that a court may view the issuance of a 1099-C as an admission that the creditor discharged the debt. The IRS explained that it did *not* view 1099-C to be such an admission:

> To briefly address your concerns about whether courts may view the filing of a Form 1099-C as a written admission that the creditor discharged the debt, and that debtors would be less willing to pay after your organization files a Form 1099-C, you should note the following. **The Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection.** Section 1.6050P-1(a) of the regulations provides that, **solely for purposes of reporting cancellation of indebtedness**, a discharge of indebtedness is deemed to occur when an identifiable event occurs whether or not an actual discharge of indebtedness has occurred on or before the date of the identifiable event.

IRS Info. 2005-0207, *2 (2005).

Here, Plaintiff is attempting to use the 1099-C in exactly the manner the IRS indicated it shouldn't: Plaintiff wants the Court to view the 1099-C as evidence that the underlying debt has been discharged. However, because a 1099-C is *not* an admission that a debt has been discharged, a 1099-C *standing alone* does not establish that a debt has been discharged.

**B.     The Majority Of Cases To Consider This Issue Agree That A 1099-C Alone Did Not Establish Discharge Of Debt.**

In support of his position, Plaintiff criticizes Capital One for citing to *F.D.I.C. v. Cashion* because it is from another jurisdiction and then goes on to cite a bankruptcy decision issued out of the District of New Jersey. Opp., at 6-7, 8-9. The Opposition fails to defeat Capital One's showing that a "majority" of courts agree

with its interpretation.

The Motion did not assert that *Cashion* is binding authority on this Court or that all courts uniformly agree on this issue. Rather, Capital One cited *Cashion* because it is the *only* circuit appeals court to have ruled on this issue to date, and in its robust discussion the Fourth Circuit conducted a survey of decisions on the topic. Although not all courts agree, the *Cashion* court acknowledged that a "majority" of courts recognize that a 1099-C, standing alone, is insufficient to establish that a debt has been extinguished. 720 F.3d 169, 179 (4th Cir. 2013). This characterization of court decisions continues to be true. In March 2017, the District of South Carolina reviewed cases that analyze this issue, and it also concluded that "[t]he majority of courts . . . found that an IRS Form 1099-C alone is not sufficient evidence that the debt has been cancelled." *In re: Gary Allen Washington*, 2017 WL 1130144, *5 (D.S.C. 2017). Plaintiff's argument that one district court in New Jersey agrees with his position thus misses the mark; Capital One does not deny the existence of conflicting opinions, but nonetheless notes that the balance of cases dictate dismissal of Plaintiff's claims.

Further, Capital One does not request the Court to rule with the majority of cases on this issue simply to follow the majority, but because these cases are in accordance with Section 1.6050P-1 and IRS guidance. As demonstrated above (*supra*, Section II.A), because creditors are required to issue 1099-Cs under Code H *even if there has been no discharge of debt*, a 1099-C alone does *not* establish that a debt has been discharged. Accordingly, the existence of a 1099-C is insufficient to demonstrate that subsequent credit reporting of a balance is inaccurate. *See Ware v. Bank of America Corporation*, 9 F. Supp. 3d 1329, 1340 (N.D. Ga. 2014) (granting defense summary judgment because 1099-C did not operate to extinguish debt and subsequent credit reporting on delinquent balance did not violate FCRA). Thus, unless Plaintiff can allege other facts that indicate actual discharge of his debt occurred (he can't), his claims must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Capital One respectfully requests that its Motion to Dismiss be granted in its entirety without leave to amend.

DATED: September 18, 2017           DOLL AMIR & ELEY LLP

                                    By: */s/ Connie Y. Tcheng*
                                         CONNIE Y. TCHENG
                                    Attorneys for Defendant,
                                    CAPITAL ONE, N.A.

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **1888 Century Park East, Suite 1850, Los Angeles, California 90067**.

On September 18, 2017, I served the foregoing document described as **DEFENDANT CAPITAL ONE, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1888 Century Park East, Suite 1850, Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT DELIVERY:** I caused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees. The envelope or package was deposited with delivery fees thereon fully prepaid.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ **BY CM/ECF:** I electronically transmitted a true copy of said document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the aforementioned CM/ECF registrants.

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 18, 2017, at Los Angeles, California.

*/s/ Genevieve Fenster*
_____
Genevieve Fenster

## SERVICE LIST

| | |
|---|---|
| Ashley Tuchman, Esq.<br>Garrett Charity, Esq.<br>MCCARTHY LAW PLC<br>4250 North Drinkwater Blvd., Suite 320<br>Scottsdale, AZ 85251 | T: (602) 456-8900<br>Ashley.tuchman@mccarthylawyer.com<br>Garrett.charity@mccarthylawyer.com<br><br>*Attorneys for Plaintiff, Milan Kunwar* |
| Thomas P. Quinn, Jr., Esq.<br>NOKES & QUINN APC<br>410 Broadway, Ste. 200<br>Laguna Beach, CA 92651 | T: (949) 376-3500<br>F: (949) 376-3070<br>tquinn@nokesquinn.com<br><br>*Attorneys for Defendant, Equifax Information Services LLC* |