**DOLL AMIR & ELEY LLP**
HUNTER R. ELEY (SBN 224321)
heley@dollamir.com
CONNIE Y. TCHENG (SBN 228171)
ctcheng@dollamir.com
1888 Century Park East, Suite 1850
Los Angeles, California 90067
Tel:  310.557.9100
Fax: 310.557.9101

Attorneys for Defendant,
CAPITAL ONE, N.A.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILAN KUNWAR,<br><br>       Plaintiff,<br><br>v.<br><br>CAPITAL ONE, NATIONAL ASSOCIATION and EQUIFAX INFORMATION SERVICES, LLC,<br><br>       Defendants. | Case No. 5:17-cv-04849-LHK<br><br>*Assigned to Hon. Lucy H. Koh;*<br>*Referred to Magistrate Judge*<br>*Nathanael M. Cousins*<br><br>**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT CAPITAL ONE, N.A.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[*Reply in Support of Motion to Dismiss filed concurrently herewith*]<br><br>Date:    December 7, 2017<br>Time:   1:30 p.m.<br>Place:  Courtroom 8 – 4th Floor<br>         280 South 1st Street<br>         San Jose, CA 95113<br><br>Complaint Filed:  July 18, 2017<br>Trial Date:      TBA |

DOLL AMIR & ELEY LLP

DOLL AMIR & ELEY LLP

**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE**

Defendant Capital One, N.A. ("Capital One") hereby requests that the Court take judicial notice of the following document, which is attached as Exhibit A:

| Exhibit | Description |
| --- | --- |
| A | Publication 4681, "Canceled Debts, Foreclosures, Repossessions, and Abandonments," issued by the Internal Revenue Service ("IRS") and available at *https://www.irs.gov/pub/irs-prior/p4681--2015.pdf*, attached hereto as **Exhibit A**. |

This request is made pursuant to Rule 201 of the Federal Rules of Evidence and the authorities are cited below.  This request is made in connection with Capital One's Reply in Support of Motion to Dismiss the Complaint filed concurrently herewith.

**BASIS FOR REQUESTING JUDICIAL NOTICE**

On a motion to dismiss, a court may take judicial notice of matters of public record in accordance with Federal Rule of Evidence 201 without converting the motion to dismiss to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citing *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Courts may take judicial notice of documents outside of the complaint that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(d); *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1117, 1109 (N.D. Cal. 2003). Courts can take judicial notice of such matters when considering a motion to dismiss. *Wietschner*, 294 F. Supp. 2d at 1109; *MGIC Indem. Corp. v. Weisman*, 803 F. 2d 500, 504 (9th Cir. 1986). As explained further below, the Court may take judicial notice of Exhibit A.

"[J]udicial notice of court filings and other matters of public record is proper." *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1137 n.8 (9th Cir. 2012) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)); *see also Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of docket report to show "what happened" in other litigation). Here,

1

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT CAPITAL ONE, N.A.'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

the attached exhibit is a public record created and issued by the IRS, which is capable of accurate and ready determination by resort to the IRS website, and whose accuracy cannot be reasonably questioned. Based on the foregoing, Capital One respectfully requests that the Court grant this request for judicial notice.

DATED:  September 18, 2017          DOLL AMIR & ELEY LLP

By: */s/ Connie Y. Tcheng*_____
     CONNIE Y. TCHENG
     Attorneys for Defendant,
     CAPITAL ONE, N.A.

DOLL AMIR & ELEY LLP

# EXHIBIT A



Department
of the
Treasury

**Internal
Revenue
Service**

**Publication 4681**
Cat. No. 51508F

# Canceled Debts, Foreclosures, Repossessions, and Abandonments

## (for Individuals)

For use in preparing

## 2015 Returns



**Get forms and other information faster and easier at:**
- *IRS.gov* (English)        • *IRS.gov/Korean* (한국어)
- *IRS.gov/Spanish* (Español)   • *IRS.gov/Russian* (Pусский)
- *IRS.gov/Chinese* (中文)      • *IRS.gov/Vietnamese* (TiếngViệt)

# Contents

Reminder . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . 2

Common Situations Covered In
      This Publication . . . . . . . . . . . . . 2

Chapter 1. Canceled Debts . . . . . . . . 2
      Form 1099-C . . . . . . . . . . . . . . 3
      Discounts and Loan
            Modifications . . . . . . . . . . . 4
      Sales or Other Dispositions
            (Such as Foreclosures and
            Repossessions) . . . . . . . . . 4
      Abandonments . . . . . . . . . . . . . 4
      Stockholder Debt . . . . . . . . . . . . 4

Exceptions . . . . . . . . . . . . . . . . . . . 4
      Gifts, Bequests, Devises, and
            Inheritances . . . . . . . . . . . . 4
      Student Loans . . . . . . . . . . . . . 4
      Deductible Debt . . . . . . . . . . . . 5
      Price Reduced After Purchase . . . . . 5
      Home Affordable Modification
            Program . . . . . . . . . . . . . . 5

Exclusions . . . . . . . . . . . . . . . . . . . 5
      Bankruptcy . . . . . . . . . . . . . . . 5
      Insolvency . . . . . . . . . . . . . . . . 5
      Qualified Farm Indebtedness . . . . . . 6
      Qualified Real Property
            Business Indebtedness . . . . . . 7
      Insolvency Worksheet . . . . . . . . . 8
      Qualified Principal Residence
            Indebtedness . . . . . . . . . . . . 9

Reduction of Tax Attributes . . . . . . . . 9
      Qualified Principal Residence
            Indebtedness . . . . . . . . . . . . 9
      Bankruptcy and Insolvency . . . . . . . 9
      Qualified Farm Indebtedness . . . . . 11
      Qualified Real Property
            Business Indebtedness . . . . . . 11

Chapter 2. Foreclosures and
      Repossessions . . . . . . . . . . . . 11
      Worksheet for Foreclosures and
            Reposessions . . . . . . . . . . . 12

Chapter 3. Abandonments . . . . . . . 13

Chapter 4. How To Get Tax Help . . . . 14

## Future Developments

For the latest information about developments related to Pub. 4681, such as legislation enacted after it was published, go to *www.irs.gov/pub4681*.

## Reminder

**Photographs of missing children.** The Internal Revenue Service is a proud partner with the National Center for Missing and Exploited Children. Photographs of missing children selected by the Center may appear in this publication on

pages that otherwise would be blank. You can help bring these children home by looking at the photographs and calling 1-800-THE-LOST (1-800-843-5678) if you recognize a child.

# Introduction

This publication explains the federal tax treatment of canceled debts, foreclosures, repossessions, and abandonments.

Generally, if you owe a debt to someone else and they cancel or forgive that debt for less than its full amount, you are treated for income tax purposes as having income and may have to pay tax on this income.

**Note.** This publication generally refers to debt that is canceled, forgiven, or discharged for less than the full amount of the debt as "canceled debt."

Sometimes a debt, or part of a debt, that you don't have to pay isn't considered canceled debt. These exceptions are discussed later under *Exceptions*.

Sometimes a canceled debt may be excluded from your income. But if you do exclude canceled debt from income, you may be required to reduce your "tax attributes." These exclusions and the reduction of tax attributes associated with them are discussed later under *Exclusions*.

Foreclosure and repossession are remedies that your lender may exercise if you fail to make payments on your loan and you have previously granted that lender a mortgage or other security interest in some of your property. These remedies allow the lender to seize or sell the property securing the loan. When your property is foreclosed upon or repossessed and sold, you are treated as having sold the property and you may recognize taxable gain. Whether you also recognize income from canceled debt depends in part on whether you are personally liable for the debt and in part on whether the outstanding loan balance is more than the fair market value (FMV) of the property. Figuring your gain or loss and income from canceled debt arising from a foreclosure or repossession is discussed later under *Foreclosures and Repossessions*.

Generally, you abandon property when you voluntarily and permanently give up possession and use of property you own with the intention of ending your ownership but without passing it on to anyone else. Figuring your gain or loss and income from canceled debt arising from an abandonment is discussed later under *Abandonments*.

**Comments and suggestions.** We welcome your comments about this publication and your suggestions for future editions.

You can send us comments from www.irs.gov/formspubs. Click on "More Information" and then on "Give us feedback."

Or you can write to:

Internal Revenue Service
Tax Forms and Publications
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

We respond to many letters by telephone. Therefore, it would be helpful if you would include your daytime phone number, including the area code, in your correspondence.

Although we can't respond individually to each comment received, we do appreciate your feedback and will consider your comments as we revise our tax products.

**Ordering forms and publications.** Visit www.irs.gov/formspubs to download forms and publications. Otherwise, you can go to www.irs.gov/orderforms to order current and prior-year forms and instructions. Your order should arrive within 10 business days.

**Tax questions.** If you have a tax question not answered by this publication, check IRS.gov and *How To Get Tax Help* at the end of this publication.

## Useful Items

You may want to see:

**Publication**

☐ **225** Farmer's Tax Guide

☐ **334** Tax Guide for Small Business (For Individuals Who Use Schedule C or C-EZ)

☐ **523** Selling Your Home

☐ **525** Taxable and Nontaxable Income

☐ **536** Net Operating Losses (NOLs) for Individuals, Estates, and Trusts

☐ **542** Corporations

☐ **544** Sales and Other Dispositions of Assets

☐ **551** Basis of Assets

☐ **908** Bankruptcy Tax Guide

**Form (and Instructions)**

☐ **982** Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment)

☐ **1099-C** Cancellation of Debt

☐ **1099-DIV** Dividends and Distributions

☐ **3800** General Business Credit

# Common Situations Covered In This Publication

The sections of this publication that apply to you depend on the type of debt canceled, the tax attributes you have, and whether or not you continue to own the property that was subject to the debt. Some examples of common circumstances are provided in the following paragraphs to help guide you through this publication. These examples don't cover every situation but are intended to provide general guidance for the most common situations.

**Nonbusiness credit card debt cancellation.** If you had a nonbusiness credit card debt canceled, you may be able to exclude the canceled

debt from income if the cancellation occurred in a title 11 bankruptcy case or you were insolvent immediately before the cancellation. You should read *Bankruptcy* or *Insolvency* under *Exclusions* in chapter 1 to see if you can exclude the canceled debt from income under one of those provisions. If you can exclude part or all of the canceled debt from income, you should also read *Bankruptcy and Insolvency* under *Reduction of Tax Attributes* in chapter 1.

**Personal vehicle repossession.** If you had a personal vehicle repossessed and disposed of by the lender during the year, you will need to determine your gain or nondeductible loss on the disposition. This is explained in chapter 2. If the lender also canceled all or part of the remaining amount of the loan, you may be able to exclude the canceled debt from income if the cancellation occurred in a title 11 bankruptcy case or you were insolvent immediately before the cancellation. You should read *Bankruptcy* or *Insolvency* under *Exclusions* in chapter 1 to see if you can exclude the canceled debt from income under one of those provisions. If you can exclude part or all of the canceled debt from income, you should also read *Bankruptcy and Insolvency* under *Reduction of Tax Attributes* in chapter 1.

**Main home foreclosure or abandonment.** If a lender foreclosed on your main home during the year, you will need to determine your gain or loss on the foreclosure. Foreclosures are explained in chapter 2 and abandonments are explained in chapter 3. If the lender also canceled all or part of the remaining amount on the mortgage loan, and you were personally liable for the debt, you should also read *Qualified Principal Residence Indebtedness* under *Exclusions* in chapter 1 to see if you can exclude part or all of the canceled debt from income.

**Main home loan modification (workout agreement).** If a lender agrees to a mortgage loan modification (a "workout" ) that includes a reduction in the principal balance of the loan, you should read *Qualified Principal Residence Indebtedness* under *Exclusions* in chapter 1 to see if you can exclude part or all of the canceled debt from income. If you can exclude part or all of the canceled debt from income, you should also read *Qualified Principal Residence Indebtedness* under *Reduction of Tax Attributes* in chapter 1.

# 1.

# Canceled Debts

This chapter discusses the tax treatment of canceled debts.

# General Rules

Generally, if a debt for which you are personally liable is forgiven or discharged for less than the full amount owed, the debt is considered canceled in whatever amount it remained unpaid. There are exceptions to this rule, discussed under *Exceptions*, later. Generally, you must include the canceled debt in your income. However, you may be able to exclude the canceled debt. See *Exclusions*, later.

**Example.** John owed $1,000 to Mary. Mary agreed to accept and John paid $400 in satisfaction of the entire debt. John has canceled debt of $600.

**Example.** Margaret owed $1,000 to Henry. Henry and Margaret agreed that Margaret would provide Henry with services (instead of money) in full satisfaction of the debt. Margaret doesn't have canceled debt. Instead, she has income from services.

A debt includes any indebtedness:
- For which you are liable, or
- Subject to which you hold property.

Debt for which you are personally liable is recourse debt. All other debt is nonrecourse debt.

If you aren't personally liable for the debt, you don't have ordinary income from the cancellation of debt unless you retain the collateral and either:
- The lender offers a discount for the early payment of the debt, or
- The lender agrees to a loan modification that results in the reduction of the principal balance of the debt.

See *Discounts and Loan Modifications*, later.

However, upon the disposition of the property securing a nonrecourse debt, the amount realized includes the entire unpaid amount of the debt, not just the FMV of the property. As a result, you may realize a gain or loss if the outstanding debt immediately before the disposition is more or less than your adjusted basis in the property. For more details on figuring your gain or loss, see chapter 2 of this publication or see Pub. 544, Sales and Other Dispositions of Assets.

There are several exceptions and exclusions that may result in part or all of a canceled debt being nontaxable. See *Exceptions* and *Exclusions*, later. You must report any taxable canceled debt as ordinary income on:
- Form 1040 or Form 1040NR, line 21, if the debt is a nonbusiness debt;
- Schedule C (Form 1040), line 6 (or Schedule C-EZ (Form 1040), line 1), if the debt is related to a nonfarm sole proprietorship;
- Schedule E (Form 1040), line 3, if the debt is related to nonfarm rental of real property;
- Form 4835, line 6, if the debt is related to a farm rental activity for which you use Form 4835 to report farm rental income based on crops or livestock produced by a tenant; or
- Schedule F (Form 1040), line 8, if the debt is farm debt and you are a farmer.

## Form 1099-C

If you receive a Form 1099-C, that means an applicable entity has reported an identifiable event to the IRS regarding a debt you owe. The identifiable event may be an actual cancellation of the debt or it may be an event the applicable entity is required, solely for purposes of reporting to the IRS, to treat as a cancellation of debt. For information on the reasons an applicable entity files Form 1099-C, see *Identifiable event codes*, next. Unless you meet one of the exceptions or exclusions discussed later, this canceled debt is ordinary income and must be reported on the appropriate form discussed above.

**An applicable entity includes:**

1. A financial institution.
2. A credit union.
3. Any of the following, its successor, or subunit of one of the following:
   a. The Federal Deposit Insurance Corporation (FDIC),
   b. The Resolution Trust Corporation (RTC),
   c. The National Credit Union Administration (NCUA), or
   d. Any other federal executive agency, including government corporations, any military department, the U.S. Postal Service, or the Postal Rate Commission.
4. A corporate subsidiary of a financial institution or credit union (if the affiliation subjects the subsidiary to federal or state regulation).
5. A federal government agency, including a department, an agency, a court or court administrative office, or a judicial or legislative instrumentality.
6. Any organization a significant trade or business of which is lending money.

For more information on the applicable entities that must file a Form 1099-C, see the Instructions for Forms 1099-A and 1099-C, available at www.irs.gov/instructions/i1099ac.

**Identifiable event codes.** Box 6 of Form 1099-C should indicate the reason the creditor filed this form. The codes shown in box 6 are explained below. Also see the chart after the explanation for a quick reference guide for the codes used in box 6.

**Note.** Codes A through G and I identify specific occurrences involving an actual discharge of indebtedness. However, Code H, *Expiration of nonpayment testing period*, identifies an occurrence that doesn't necessarily involve an actual discharge of indebtedness.

**Code A — Bankruptcy.** Code A is used to identify cancellation of debt as a result of a title 11 bankruptcy case. See *Bankruptcy*, later.

**Code B — Other judicial debt relief.** Code B is used to identify cancellation of debt

as a result of a receivership, foreclosure, or similar federal or state court proceeding other than bankruptcy.

**Code C — Statute of limitations or expiration of deficiency period.** Code C is used to identify cancellation of debt either when the statute of limitations for collecting the debt expires or when the statutory period for filing a claim or beginning a deficiency judgment proceeding expires. In the case of the expiration of a statute of limitations, an identifiable event occurs only if and when your affirmative defense of the statute of limitations is upheld in a final judgment or decision in a judicial proceeding, and the period for appealing the judgment or decision has expired.

**Code D — Foreclosure election.** Code D is used to identify cancellation of debt when the creditor elects foreclosure remedies that statutorily end or bar the creditor's right to pursue collection of the debt. This event applies to a mortgage lender or holder who is barred from pursuing debt collection after a power of sale in the mortgage or deed of trust is exercised.

**Code E — Debt relief from probate or similar proceeding.** Code E is used to identify cancellation of debt as a result of a probate court or similar legal proceeding.

**Code F — By agreement.** Code F is used to identify cancellation of debt as a result of an agreement between the creditor and the debtor to cancel the debt at less than full consideration.

**Code G — Decision or policy to discontinue collection.** Code G is used to identify cancellation of debt as a result of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt. For purposes of this identifiable event, a defined policy includes both a written policy and the creditor's established business practice.

**Code H — Expiration of nonpayment testing period.** Code H is used to indicate that the creditor hasn't received a payment on the debt during a testing period ending on December 31, 2015. The testing period is a 36-month period increased by the number of months the creditor was prevented from engaging in collection activity by a stay in bankruptcy or similar bar under state or local law. This identifiable event applies only for a creditor that is a financial institution or credit union (and certain of their subsidiaries), the FDIC, the RTC, the NCUA, any other federal executive agencies, and any successor or subunit of the FDIC, the RTC, the NCUA, or a federal executive agency.

Expiration of the nonpayment testing period doesn't necessarily result from an actual discharge of indebtedness.

**Code I — Other actual discharge before identifiable event.** Code I is used to identify an actual cancellation of debt that occurs before any of the identifiable events described in codes A through H.

## Form 1099-C Reference Guide for Box 6 Identifiable Event Codes

A  Bankruptcy
B  Other judicial debt relief
C  Statute of limitations or expiration of deficiency period
D  Foreclosure election
E  Debt relief from probate or similar proceeding
F  By agreement
G  Decision or policy to discontinue collection
H  Expiration of nonpayment testing period
I  Other actual discharge before identifiable event

 *Even if you didn't receive a Form 1099-C, you must report canceled debt as gross income on your tax return unless one of the exceptions or exclusions described later applies.*

**Amount of canceled debt.** The amount in box 2 of Form 1099-C may represent some or all of the debt that has been canceled or treated as canceled. The amount in box 2 will include principal and may include interest and other nonprincipal amounts (such as fees or penalties). Unless you meet one of the exceptions or exclusions discussed later, the amount of the debt that has been canceled is ordinary income and must be reported on the appropriate form as discussed earlier.

**Interest included in canceled debt.** If any interest is included in the amount of canceled debt in box 2, it will be shown in box 3. Whether the interest portion of the canceled debt must be included in your income depends on whether the interest would be deductible if you paid it. See *Deductible Debt* under *Exceptions,* later.

**Persons who each receive a Form 1099-C showing the full amount of debt.** If you and another person were jointly and severally liable for a canceled debt, each of you may get a Form 1099-C showing the entire amount of the canceled debt. However, you may not have to report that entire amount as income. The amount, if any, you must report depends on all the facts and circumstances, including:

• State law,
• The amount of debt proceeds each person received,
• How much of any interest deduction from the debt was claimed by each person,
• How much of the basis of any co-owned property bought with the debt proceeds was allocated to each co-owner, and
• Whether the canceled debt qualifies for any of the exceptions or exclusions described in this publication.

See *Example 3* under *Insolvency,* later.

## Discounts and Loan Modifications

If a lender discounts (reduces) the principal balance of a loan because you pay it off early, or agrees to a loan modification (a "workout") that includes a reduction in the principal balance of a loan, the amount of the discount or the amount of principal reduction is canceled debt.

However, if the debt is nonrecourse and you didn't retain the collateral, you can't have cancellation of debt income. The amount of the canceled debt must be included in income unless one of the exceptions or exclusions described later applies. For more details, see *Exceptions* and *Exclusions,* later.

## Sales or Other Dispositions (Such as Foreclosures and Repossessions)

**Recourse debt.** If you owned property that was subject to a recourse debt in excess of the FMV of the property, the lender's foreclosure or repossession of the property is treated as a sale or disposition of the property by you and may result in your realization of gain or loss. The gain or loss on the disposition of the property is measured by the difference between the FMV of the property at the time of the disposition and your adjusted basis (usually your cost) in the property. The character of the gain or loss (such as ordinary or capital) is determined by the character of the property. If the lender forgives all or part of the amount of the debt in excess of the FMV of the property, the cancellation of the excess debt may result in ordinary income. This ordinary income from the cancellation of debt (the excess of the canceled debt over the FMV of the property) must be included in your gross income reported on your tax return unless one of the exceptions or exclusions described later applies. For more details, see *Exceptions* and *Exclusions,* later.

**Nonrecourse debt.** If you owned property that was subject to a nonrecourse debt in excess of the FMV of the property, the lender's foreclosure on the property doesn't result in ordinary income from the cancellation of debt. The entire amount of the nonrecourse debt is treated as an amount realized on the disposition of the property. The gain or loss on the disposition of the property is measured by the difference between the total amount realized (the entire amount of the nonrecourse debt plus the amount of cash and the FMV of any property received) and your adjusted basis in the property. The character of the gain or loss is determined by the character of the property.

**More information.** See *chapter 2* of this publication and Pubs. 523, 544, and 551 for more details.

## Abandonments

**Recourse debt.** If you abandon property that secures a debt for which you are personally liable (recourse debt) and the debt is canceled, you will realize ordinary income equal to the canceled debt. You must report this income on your tax return unless one of the exceptions or exclusions described later applies. For more details, see *Exceptions* and *Exclusions,* later. This income is separate from any amount realized from the abandonment of the property. For more details, see *chapter 3.*

**Nonrecourse debt.** If you abandon property that secures a debt for which you aren't personally liable (nonrecourse debt), you may realize gain or loss but won't have cancellation of indebtedness income.

## Stockholder Debt

If you are a stockholder in a corporation and the corporation cancels or forgives your debt to it, the canceled debt is a constructive distribution. For more information, see Pub. 542, Corporations.

# Exceptions

There are several exceptions to the requirement that you include canceled debt in income. These exceptions apply before the exclusions discussed later and don't require you to reduce your tax attributes.

## Gifts, Bequests, Devises, and Inheritances

In most cases, you don't have income from canceled debt if the debt is canceled as a gift, bequest, devise, or inheritance.

## Student Loans

Certain student loans provide that all or part of the debt incurred to attend a qualified educational institution will be canceled if the person who received the loan works for a certain period of time in certain professions for any of a broad class of employers.

If your student loan is canceled as the result of this type of provision, the cancellation of this debt isn't included in your gross income. To qualify for this treatment, the loan must have been made by:

1. The Federal Government, a state or local government, or an instrumentality, agency, or subdivision of one of those governments,

2. A tax-exempt public benefit corporation that has assumed control of a state, county, or municipal hospital, and whose employees are considered public employees under state law, or

3. An *educational institution* (defined later):

   a. Under an agreement with an entity described in (1) or (2) that provided the funds to the institution to make the loan, or

   b. As part of a program of the institution designed to encourage students to serve in occupations or areas with unmet needs and under which the services provided are for or under the direction of a governmental unit or a tax-exempt section *501(c)(3) organization* (defined later).

A loan to refinance a qualified student loan also will qualify if it was made by an educational institution or a tax-exempt section 501(a) organization under its program designed as described in (3)(b).

**Exception.** Generally, the cancellation of a student loan made by an educational institution because of services you performed for that institution or another organization that provided funds for the loan must be included in the gross income on your tax return.

**Education loan repayment assistance.** Education loan repayments made to you by the National Health Service Corps Loan Repayment Program or a state education loan repayment program eligible for funds under the Public Health Service Act aren't taxable if you agree to provide primary health services in health professional shortage areas.

Amounts you received after 2008 under any other state loan repayment or loan forgiveness program also aren't taxable. The program must be intended to increase the availability of health care services in underserved areas or areas with a shortage of health professionals.

**Educational institution.** An educational institution is an organization with a regular faculty and curriculum and a regularly enrolled body of students in attendance at the place where the educational activities are carried on.

**Section 501(c)(3) organization.** A section 501(c)(3) organization is a tax-exempt corporation, community chest, fund, or foundation organized and operated exclusively for one or more of the following purposes.

- Charitable.
- Educational.
- Fostering national or international amateur sports competition (but only if none of the organization's activities involve providing athletic facilities or equipment).
- Literary.
- Preventing cruelty to children or animals.
- Religious.
- Scientific.
- Testing for public safety.

## Deductible Debt

If you use the cash method of accounting, you don't realize income from the cancellation of debt if the payment of the debt would have been a deductible expense. This exception applies before the price reduction exception discussed next.

**Example.** In December 2014, you get accounting services for your farm on credit. In early 2015, you have trouble paying your farm debts and your accountant forgives part of the amount you owe for the accounting services. How you treat the canceled debt depends on your method of accounting.

- **Cash method.** You don't include the canceled debt in income because payment of the debt would have been deductible as a business expense in 2015.
- **Accrual method.** Unless another exception or exclusion applies, you must include the canceled debt in ordinary income because the expense was deductible in 2014 when you incurred the debt.

## Price Reduced After Purchase

If you owe the seller for the purchase of property is reduced by the seller at a time when you aren't insolvent and the reduction doesn't occur in a title 11 bankruptcy case, the reduction doesn't result in cancellation of debt income. However, you must reduce your basis in the property by the amount of the reduction of your debt to the seller. The rules that apply to bankruptcy and insolvency are explained in *Exclusions*, later.

## Home Affordable Modification Program

Pay-for-Performance Success Payments and PRA investor incentive payments that reduce the principal balance of your home mortgage under the Home Affordable Modification Program (HAMP) are generally not taxable.

However, reductions of the principal balance of your home mortgage under HAMP's Principal Reduction Alternative may be taxable as cancellation of debt income. You may be able to recognize this income over a 3-year period. For more information, see *www.irs.gov/uac/Principal-Reduction-Alternative-Under-the-Home-Affordable-Modification-Program* and Revenue Procedure 2013-16, available at *www.irs.gov/irb/2013-07_IRB/ar09.html*.

---

## Exclusions

After you have applied any exceptions to the general rule that a canceled debt is included in your income, there are several reasons why you might still be able to exclude a canceled debt from your income. These exclusions are explained next. If a canceled debt is excluded from your income, it is nontaxable. In most cases, however, if you exclude canceled debt from income under one of these provisions, you must also reduce your tax attributes (certain credits, losses, and basis of assets) as explained later under *Reduction of Tax Attributes*.

⚠️ **CAUTION**
**Reacquisition of business debt.** If you elected to defer and ratably include income from the cancellation of business debt arising from the reacquisition of certain business debt in 2009 and/or 2010, you must include the second portion of the deferred debt in gross income on your 2015 return.

## Bankruptcy

Debt canceled in a title 11 bankruptcy case isn't included in your income. A title 11 bankruptcy case is a case under title 11 of the United States Code (including all chapters in title 11 such as chapters 7, 11, and 13), but only if the debtor is under the jurisdiction of the court and the cancellation of the debt is granted by the court or occurs as a result of a plan approved by the court.

**How to report the bankruptcy exclusion.** To show that your debt was canceled in a bank-

ruptcy case and is excluded from income, attach Form 982 to your federal income tax return and check the box on line 1a. Lines 1b through 1e don't apply to a cancellation that occurs in a title 11 bankruptcy case. Enter the total amount of debt canceled in your title 11 bankruptcy case on line 2. You must also reduce your tax attributes in Part II of Form 982 as explained under *Reduction of Tax Attributes*, later.

## Insolvency

Don't include a canceled debt in income to the extent that you were insolvent immediately before the cancellation. You were insolvent immediately before the cancellation to the extent that the total of all of your liabilities was more than the FMV of all of your assets immediately before the cancellation. For purposes of determining insolvency, assets include the value of everything you own (including assets that serve as collateral for debt and exempt assets which are beyond the reach of your creditors under the law, such as your interest in a pension plan and the value of your retirement account). Liabilities include:

- The entire amount of recourse debts,
- The amount of nonrecourse debt that isn't in excess of the FMV of the property that is security for the debt, and
- The amount of nonrecourse debt in excess of the FMV of the property subject to the nonrecourse debt to the extent nonrecourse debt in excess of the FMV of the property subject to the debt is forgiven.

 *You can use the Insolvency Worksheet, to help calculate the extent that you were insolvent immediately before the cancellation.*

**Note.** This exclusion doesn't apply to a cancellation of debt that occurs in a title 11 bankruptcy case. It also doesn't apply if the debt is qualified principal residence indebtedness (defined in this section under *Qualified Principal Residence Indebtedness*, later) unless you elect to apply the insolvency exclusion instead of the qualified principal residence indebtedness exclusion.

**How to report the insolvency exclusion.** To show that you are excluding canceled debt from income under the insolvency exclusion, attach Form 982 to your federal income tax return and check the box on line 1b. On line 2, include the smaller of the amount of the debt canceled or the amount by which you were insolvent immediately before the cancellation. You can use the *Insolvency Worksheet*, later, to help calculate the extent that you were insolvent immediately before the cancellation. You must also reduce your tax attributes in Part II of Form 982 as explained under *Reduction of Tax Attributes*, later.

**Example 1—amount of insolvency more than canceled debt.** In 2015, Greg was released from his obligation to pay his personal credit card debt in the amount of $5,000. Greg received a 2015 Form 1099-C from his credit card lender showing the entire amount of discharged debt of $5,000 in box 2. None of the exceptions to the general rule that canceled

debt is included in income apply. Greg uses the Insolvency Worksheet to determine that his total liabilities immediately before the cancellation were $15,000 and the FMV of his total assets immediately before the cancellation was $7,000. This means that immediately before the cancellation, Greg was insolvent to the extent of $8,000 ($15,000 total liabilities minus $7,000 FMV of his total assets). Because the amount by which Greg was insolvent immediately before the cancellation was more than the amount of his debt canceled, Greg can exclude the entire $5,000 canceled debt from income.

When completing his tax return, Greg checks the box on line 1b of Form 982 and enters $5,000 on line 2. Greg completes Part II to reduce his tax attributes as explained under *Reduction of Tax Attributes,* later. Greg doesn't include any of the $5,000 canceled debt on line 21 of his Form 1040. None of the canceled debt is included in his income.

***Example 2—amount of insolvency less than canceled debt.*** The facts are the same as in Example 1 except that Greg's total liabilities immediately before the cancellation were $10,000 and the FMV of his total assets immediately before the cancellation was $7,000. In this case, Greg is insolvent to the extent of $3,000 ($10,000 total liabilities minus $7,000 FMV of his total assets) immediately before the cancellation. Because the amount of the canceled debt was more than the amount by which Greg was insolvent immediately before the cancellation, Greg can exclude only $3,000 of the $5,000 canceled debt from income under the insolvency exclusion.

Greg checks the box on line 1b of Form 982 and includes $3,000 on line 2. Also, Greg completes Part II to reduce his tax attributes as explained under *Reduction of Tax Attributes,* later. Additionally, Greg must include $2,000 of canceled debt on line 21 of his Form 1040 (unless another exclusion applies).

***Example 3—joint debt and separate returns.*** In 2015, James and his wife Robin were released from their obligation to pay a debt of $10,000 for which they were jointly and severally liable. None of the exceptions to the general rule that canceled debt is included in income apply. They incurred the debt (originally $12,000) to finance James's purchase of a $9,000 motorcycle and Robin's purchase of a laptop computer and software for personal use for $3,000. They each received a 2015 Form 1099-C from the bank showing the entire canceled debt of $10,000 in box 2. Based on the use of the loan proceeds, they agreed that James was responsible for 75% of the debt and Robin was responsible for the remaining 25%. Therefore, James's share of the debt is $7,500 (75% of $10,000), and Robin's share is $2,500 (25% of $10,000). By completing the Insolvency Worksheet, James determines that, immediately before the cancellation of the debt, he was insolvent to the extent of $5,000 ($15,000 total liabilities minus $10,000 FMV of his total assets). He can exclude $5,000 of his $7,500 canceled debt. Robin completes a separate insolvency worksheet and determines she was insolvent to the extent of $4,000 ($9,000 total liabilities minus $5,000 FMV of her total assets).

She can exclude her entire canceled debt of $2,500.

When completing his separate tax return, James checks the box on line 1b of Form 982 and enters $5,000 on line 2. He completes Part II to reduce his tax attributes as explained under *Reduction of Tax Attributes,* later. He must include the remaining $2,500 ($7,500 − $5,000) of canceled debt on line 21 of his Form 1040 (unless another exclusion applies).

When completing her return, Robin checks the box on line 1b of Form 982 and enters $2,500 on line 2. She completes Part II to reduce her tax attributes as explained under *Reduction of Tax Attributes,* later. She doesn't include any of the canceled debt on line 21 of her Form 1040. None of the canceled debt has to be included in her income.

## Qualified Farm Indebtedness

You can exclude canceled farm debt from income on your 2015 return if all of the following apply.

- The debt was incurred directly in connection with your operation of the trade or business of farming.

- Fifty percent or more of your total gross receipts for 2012, 2013, and 2014 were from the trade or business of farming.

- The cancellation was made by a qualified person. A qualified person is an individual, organization, partnership, association, corporation, or other person, who is actively and regularly engaged in the business of lending money. A qualified person also includes any federal, state, or local government or agency or instrumentality of one of those governments. For example, the United States Department of Agriculture is a qualified person. A qualified person can't be related to you, can't be the person from whom you acquired the property (or a person related to this person), and can't be a person who receives a fee due to your investment in the property (or a person related to this person).

For the definition of the term "related person," see *Related persons* under *At-Risk Amounts* in Pub. 925, Passive Activity and At-Risk Rules.

**Note.** This exclusion doesn't apply to a cancellation of debt in a title 11 bankruptcy case or to the extent you were insolvent immediately before the cancellation. If qualified farm debt is canceled in a title 11 case, you must apply the bankruptcy exclusion rather than the exclusion for canceled qualified farm debt. If you were insolvent immediately before the cancellation of the qualified farm debt, you must apply the insolvency exclusion before applying the exclusion for canceled qualified farm debt.

**Exclusion limit.** The amount of canceled qualified farm debt you can exclude from income under this exclusion is limited. It can't be more than the sum of:

- Your adjusted tax attributes, and

- The total adjusted bases of qualified property you held at the beginning of 2016.

If you excluded canceled debt under the insolvency exclusion, the adjusted basis of any

qualified property and adjusted tax attributes are determined after any reduction of tax attributes required under the insolvency exclusion.

Any canceled qualified farm debt that is more than this limit must be included in your income.

For more information about the basis of property, see Pub. 551, Basis of Assets.

**Adjusted tax attributes.** Adjusted tax attributes means the sum of the following items.

1. Any net operating loss (NOL) for 2015 and any NOL carryover to 2015.

2. Any net capital loss for 2015 and any capital loss carryover to 2015.

3. Any passive activity loss carryover from 2015.

4. Three times the sum of any:

    a. General business credit carryover to or from 2015,

    b. Minimum tax credit available as of the beginning of 2016,

    c. Foreign tax credit carryover to or from 2015, and

    d. Passive activity credit carryover from 2015.

**Qualified property.** This is any property you use or hold for use in your trade or business or for the production of income.

**How to report the qualified farm indebtedness exclusion.** To show that all or part of your canceled debt is excluded from income because it is qualified farm debt, check the box on line 1c of Form 982 and attach it to your Form 1040. On line 2 of Form 982, include the amount of the canceled farm debt, but not more than the exclusion limit (explained earlier). You must also reduce your tax attributes in Part II of Form 982 as explained under *Reduction of Tax Attributes,* later.

***Example 1.*** In 2015, Chuck was released from his obligation to pay a $10,000 debt that was incurred directly in connection with his trade or business of farming. Chuck received a Form 1099-C from the qualified lender showing discharged debt of $10,000 in box 2. For his 2012, 2013, and 2014 tax years, at least 50% of Chuck's total gross receipts were from the trade or business of farming. Chuck's adjusted tax attributes are $5,000 and Chuck has $3,000 total adjusted bases in qualified property at the beginning of 2016. Chuck had no other debt canceled during 2015 and no other exception or exclusion relating to canceled debt income applies.

Chuck can exclude $8,000 ($5,000 of adjusted tax attributes plus $3,000 total adjusted bases in qualified property at the beginning of 2016) of the $10,000 canceled debt from income. Chuck checks the box on line 1c of Form 982 and enters $8,000 on line 2. Also, Chuck completes Part II to reduce his tax attributes as explained under *Reduction of Tax Attributes,* later. The remaining $2,000 of canceled qualified farm debt is included in Chuck's income on Schedule F, line 8.

**Example 2.** On March 2, 2015, Bob was released from his obligation to pay a $10,000 business credit card debt that was used directly in connection with his farming business. For his 2012, 2013, and 2014 tax years, at least 50% of Bob's total gross receipts were from the trade or business of farming. Bob received a 2015 Form 1099-C from the qualified lender showing discharged debt of $10,000 in box 2. The FMV of Bob's total assets on March 2, 2015 (immediately before the cancellation of the credit card debt), was $7,000 and Bob's total liabilities at that time were $11,000. Bob's adjusted tax attributes (a 2015 NOL) were $7,000 and Bob has $4,000 total adjusted bases in qualified property at the beginning of 2016.

Bob also qualifies to exclude $4,000 of the canceled debt under the insolvency exclusion because he is insolvent to the extent of $4,000 immediately before the cancellation ($11,000 total liabilities minus $7,000 FMV of total assets). Bob must reduce his tax attributes under the insolvency rules before applying the rules for qualified farm debt.

Bob also qualifies to exclude the remaining $6,000 of canceled qualified farm debt. The limit on Bob's exclusion from income of canceled qualified farm debt is $7,000, the sum of his adjusted tax attributes of $3,000 (the $7,000 NOL minus the $4,000 reduction of tax attributes required because of the $4,000 exclusion of canceled debt under the insolvency exclusion) plus $4,000 (Bob's total adjusted bases in qualified property at the beginning of 2016).

Bob checks the boxes on lines 1b and 1c of Form 982 and enters $10,000 on line 2. Bob completes Part II to reduce his tax attributes as explained under *Reduction of Tax Attributes*, later. Bob doesn't include any of his canceled debt in income.

**Example 3.** The facts are the same as in Example 2 except that immediately before the cancellation Bob was insolvent to the extent of the full $10,000 canceled debt. Because the exclusion for qualified farm debt doesn't apply to the extent that Bob was insolvent immediately before the cancellation, he checks only the box on line 1b of Form 982 and enters $10,000 on line 2. Bob completes Part II to reduce his tax attributes based on the insolvency exclusion as explained under *Reduction of Tax Attributes*, later. Bob doesn't include any of the canceled debt in income.

# Qualified Real Property Business Indebtedness

You can elect to exclude canceled qualified real property business indebtedness from income. Qualified real property business indebtedness is debt (other than qualified farm debt) that meets all of the following conditions.

1. It was incurred or assumed in connection with real property used in a trade or business.

2. It is secured by that real property. As long as certain other requirements are met, indebtedness that is secured by 100% of the ownership interest in a disregarded entity holding real property will be treated as indebtedness that is secured by real

property. For more information, and for the requirements that must be met, see Revenue Procedure 2014-20 available at *www.irs.gov/irb/2014-9_IRB/ar09.html*.

3. It was incurred or assumed:

   a. Before 1993, or

   b. After 1992, if the debt is either (i) qualified acquisition indebtedness (defined next), or (ii) debt incurred to refinance qualified acquisition business debt incurred or assumed before 1993 (but only to the extent the amount of such debt doesn't exceed the amount of debt being refinanced).

4. It is debt to which you elect to apply these rules.

 Residential rental property generally qualifies as real property used in a trade or business unless you also use the dwelling as a home. For more information, see Dwelling Unit Used as a Home in Pub. 527.

**Definition of qualified acquisition indebtedness.** Qualified acquisition indebtedness is:

- Debt incurred or assumed to acquire, construct, reconstruct, or substantially improve real property that is used in a trade or business and secures the debt, or
- Debt resulting from the refinancing of qualified acquisition indebtedness, to the extent the amount of the debt doesn't exceed the amount of debt being refinanced.

**Note.** This exclusion doesn't apply to a cancellation of debt in a title 11 bankruptcy case or to the extent you were insolvent immediately before the cancellation. If qualified real property business debt is canceled in a title 11 bankruptcy case, you must apply the bankruptcy exclusion rather than the exclusion for canceled qualified real property business debt. If you were insolvent immediately before the cancellation of qualified real property business debt, you must apply the insolvency exclusion before applying the exclusion for canceled qualified real property business debt.

**Exclusion limit.** The amount of canceled qualified real property business debt you can exclude from income under this exclusion is limited to the excess (if any) of:

- The outstanding principal amount of the qualified real property business debt (immediately before the cancellation), over
- The FMV (immediately before the cancellation) of the business real property securing the debt, reduced by the outstanding principal amount of any other qualified real property business debt secured by that property (immediately before the cancellation).

In addition to this limit, a second overall limit applies. The amount of canceled qualified real property business debt you can exclude from income can't be more than the total adjusted bases of depreciable real property you held immediately before the cancellation of the qualified real property business indebtedness (other than depreciable real property acquired in contemplation of the cancellation). When figuring

this overall limit, use the adjusted basis of the depreciable real property after any reductions in basis required because of the exclusion of debt canceled under the bankruptcy, insolvency, or farm debt provisions described in this publication.

For more information about the basis of property, see Pub. 551.

**How to elect the qualified real property business debt exclusion.** You must make an election to exclude canceled qualified real property business debt from gross income. The election must be made on a timely filed (including extensions) federal income tax return for 2015 and can be revoked only with IRS consent. The election is made by completing Form 982 in accordance with its instructions. Attach Form 982 to your federal income tax return for 2015 and check the box on line 1d. Include the amount of canceled qualified real property business debt (but not more than the amount of the exclusion limit, explained earlier) on line 2 of Form 982. You must also reduce your tax attributes in Part II of Form 982 as explained under *Reduction of Tax Attributes*, later.

If you timely filed your tax return without making this election, you can still make the election by filing an amended return within 6 months of the due date of the return (excluding extensions). Enter "Filed pursuant to section 301.9100-2" on the amended return and file it at the same place you filed the original return.

**Example.** In 2009, Curt bought a retail store for use in a business he operated as a sole proprietorship. Curt made a $20,000 down payment and financed the remaining $200,000 of the purchase price with a bank loan. The bank loan was a recourse loan and was secured by the property. Curt used the property in his business continuously since he bought it. He had no other debt secured by that depreciable real property. In addition to the retail store, Curt owned depreciable equipment and furniture with an adjusted basis of $50,000.

Curt's business encountered financial difficulties in 2015. On September 25, 2015, the bank financing the retail store loan entered into a workout agreement with Curt under which it canceled $20,000 of the debt. Immediately before the cancellation, the outstanding principal balance on the retail store loan was $185,000, the FMV of the store was $165,000, and the adjusted basis was $210,000 ($220,000 cost minus $10,000 accumulated depreciation).

The bank sent him a 2015 Form 1099-C showing discharged debt of $20,000 in box 2. Curt had no tax attributes other than basis to reduce and didn't qualify for any exception or exclusion other than the qualified real property business debt exclusion.

Curt elects to apply the qualified real property business debt exclusion to the canceled debt. The amount of canceled qualified real property business debt that he can exclude from income is limited to $20,000 (the excess of the $185,000 outstanding principal amount of his qualified real property business debt immediately before the cancellation over the $165,000 FMV of the business real property securing the debt). Curt's exclusion is also subject

## Insolvency Worksheet

*Keep for Your Records* 

| | |
|---|---|
| **Date debt was canceled (mm/dd/yy)** | |

**Part I. Total liabilities immediately before the cancellation (don't include the same liability in more than one category)**

| | Liabilities (debts) | Amount Owed Immediately Before the Cancellation |
|---|---|---|
| 1. | Credit card debt | $ |
| 2. | Mortgage(s) on real property (including first and second mortgages and home equity loans) (mortgage(s) can be on personal residence, any additional residence, or property held for investment or used in a trade or business) | $ |
| 3. | Car and other vehicle loans | $ |
| 4. | Medical bills owed | $ |
| 5. | Student loans | $ |
| 6. | Accrued or past-due mortgage interest | $ |
| 7. | Accrued or past-due real estate taxes | $ |
| 8. | Accrued or past-due utilities (water, gas, electric) | $ |
| 9. | Accrued or past-due child care costs | $ |
| 10. | Federal or state income taxes remaining due (for prior tax years) | $ |
| 11. | Judgments | $ |
| 12. | Business debts (including those owed as a sole proprietor or partner) | $ |
| 13. | Margin debt on stocks and other debt to purchase or secured by investment assets other than real property | $ |
| 14. | Other liabilities (debts) not included above | $ |
| 15. | **Total liabilities immediately before the cancellation. Add lines 1 through 14.** | $ |

**Part II. Fair market value (FMV) of assets owned immediately before the cancellation (don't include the FMV of the same asset in more than one category)**

| | Assets | FMV Immediately Before the Cancellation |
|---|---|---|
| 16. | Cash and bank account balances | $ |
| 17. | Real property, including the value of land (can be main home, any additional home, or property held for investment or used in a trade or business) | $ |
| 18. | Cars and other vehicles | $ |
| 19. | Computers | $ |
| 20. | Household goods and furnishings (for example, appliances, electronics, furniture, etc.) | $ |
| 21. | Tools | $ |
| 22. | Jewelry | $ |
| 23. | Clothing | $ |
| 24. | Books | $ |
| 25. | Stocks and bonds | $ |
| 26. | Investments in coins, stamps, paintings, or other collectibles | $ |
| 27. | Firearms, sports, photographic, and other hobby equipment | $ |
| 28. | Interest in retirement accounts (IRA accounts, 401(k) accounts, and other retirement accounts) | $ |
| 29. | Interest in a pension plan | $ |
| 30. | Interest in education accounts | $ |
| 31. | Cash value of life insurance | $ |
| 32. | Security deposits with landlords, utilities, and others | $ |
| 33. | Interests in partnerships | $ |
| 34. | Value of investment in a business | $ |
| 35. | Other investments (for example, annuity contracts, guaranteed investment contracts, mutual funds, commodity accounts, interests in hedge funds, and options) | $ |
| 36. | Other assets not included above | $ |
| 37. | **FMV of total assets immediately before the cancellation. Add lines 16 through 36.** | $ |

**Part III. Insolvency**

| | | |
|---|---|---|
| 38. | **Amount of Insolvency.** Subtract line 37 from line 15. If zero or less, you aren't insolvent. | **$** |

Publication 4681 (2015)

to an overall $210,000 limit equal to the adjusted basis of depreciable real property he held immediately before the cancellation.

Thus, Curt can exclude the entire $20,000 of canceled qualified real property business debt from income. Curt checks the box on line 1d of Form 982 and enters $20,000 on line 2. Curt must also use line 4 of Form 982 to reduce his basis in depreciable real property by the $20,000 of canceled qualified real property business debt excluded from his income as explained under *Reduction of Tax Attributes*, later.

## Qualified Principal Residence Indebtedness

You can exclude canceled debt from income if it is qualified principal residence indebtedness. Qualified principal residence indebtedness is any mortgage you took out to buy, build, or substantially improve your main home. It also must be secured by your main home. Qualified principal residence indebtedness also includes any debt secured by your main home that you used to refinance a mortgage you took out to buy, build, or substantially improve your main home, but only up to the amount of the old mortgage principal just before the refinancing.

*Example 1.* In 2009, Becky bought a main home for $315,000. She took out a $300,000 mortgage loan to buy the home and made a down payment of $15,000. The loan was secured by the home. In 2010, Becky took out a second mortgage loan in the amount of $50,000 that she used to add a garage to her home

In 2015, when the outstanding principal of her first and second mortgage loans was $325,000, Becky refinanced the two loans into one loan in the amount of $400,000. The FMV of the home at the time of the refinancing was $430,000. She used the additional $75,000 debt proceeds ($400,000 new mortgage loan minus $325,000 outstanding principal balances of her first and second mortgage loans immediately before the refinancing) to pay off personal credit cards and to pay college tuition for her daughter.

After the refinancing, Becky's qualified principal residence indebtedness is $325,000 because the debt resulting from the refinancing is qualified principal residence indebtedness only to the extent it isn't more than the old mortgage principal just before the refinancing.

*Example 2.* In 2012, Steve acquired his main home for $200,000, subject to a mortgage of $175,000. In 2013, he took out a home equity loan for $10,000, secured by his main home, which he used to pay off personal credit cards.

In 2014, when the outstanding principal on his mortgage was $170,000 and the outstanding principal on his home equity loan was $9,000, he refinanced the two loans into one loan in the amount of $200,000. The FMV of the home at the time of refinancing was $210,000. He used the additional $21,000 ($200,000 new mortgage loan minus $179,000 outstanding principal balances on the mortgage and home equity loan) to cover medical expenses.

After refinancing, Steve's qualified principal residence indebtedness is $170,000 because the debt resulting from the refinancing is

qualified principal residence indebtedness only to the extent it refinances debt that had been secured by the main home and was used to buy, build, or substantially improve the main home.

**Main home.** Your main home is the one in which you live most of the time. You can have only one main home at any one time.

*Note.* This exclusion doesn't apply to a cancellation of debt in a title 11 bankruptcy case. If qualified principal residence indebtedness is canceled in a title 11 bankruptcy case, you must apply the bankruptcy exclusion rather than the exclusion for qualified principal residence indebtedness. If you were insolvent immediately before the cancellation, you can elect to apply the insolvency exclusion (as explained under *Insolvency*, earlier) instead of applying the qualified principal residence indebtedness exclusion. To do this, check the box on line 1b of Form 982 instead of the box on line 1e.

**Exclusion limit.** The maximum amount you can treat as qualified principal residence indebtedness is $2 million ($1 million if married filing separately). You can't exclude canceled qualified principal residence indebtedness from income if the cancellation was for services performed for the lender or on account of any other factor not directly related to a decline in value of your home or to your financial condition.

**Ordering rule.** If only a part of a loan is qualified principal residence indebtedness, the exclusion applies only to the extent the amount canceled is more than the amount of the loan (immediately before the cancellation) that is not qualified principal residence indebtedness. The remaining part of the loan may qualify for another exclusion.

*Example.* Ken incurred recourse debt of $800,000 when he bought his main home for $880,000. When the FMV of the property was $1,000,000, Ken refinanced the debt for $850,000. At the time of the refinancing, the principal balance of the original mortgage loan was $740,000. Ken used the $110,000 he obtained from the refinancing ($850,000 minus $740,000) to pay off his credit cards and to buy a new car.

About 2 years after the refinancing, Ken lost his job and was unable to get another job paying a comparable salary. Ken's home had declined in value to between $700,000 and $750,000. Based on Ken's circumstances, the lender agreed to allow a short sale of the property for $735,000 and to cancel the remaining $115,000 of the $850,000 debt. Under the ordering rule, Ken can exclude only $5,000 of the canceled debt from his income under the exclusion for canceled qualified principal residence indebtedness ($115,000 canceled debt minus the $110,000 amount of the debt that wasn't qualified principal residence indebtedness). Ken must include the remaining $110,000 of canceled debt in income on line 21 of his Form 1040 (unless another exclusion applies).

**How to report the qualified principal residence indebtedness exclusion.** To show

that all or part of your canceled debt is excluded from income because it is qualified principal residence indebtedness, attach Form 982 to your federal income tax return and check the box on line 1e. On line 2 of Form 982, include the amount of canceled qualified principal residence indebtedness, but not more than the amount of the exclusion limit (explained earlier). If you continue to own your home after a cancellation of qualified principal residence indebtedness, you must reduce your basis in the home as explained under *Reduction of Tax Attributes*, next.

# Reduction of Tax Attributes

If you exclude canceled debt from income, you must reduce certain tax attributes (but not below zero) by the amount excluded. Use Part II of Form 982 to reduce your tax attributes. The order in which the tax attributes are reduced depends on the reason the canceled debt was excluded from income. If the total amount of canceled debt excluded from income (line 2 of Form 982) was more than your total tax attributes, the total reduction of tax attributes in Part II of Form 982 will be less than the amount on line 2.

## Qualified Principal Residence Indebtedness

If you exclude canceled qualified principal residence indebtedness from income and you continue to own the home after the cancellation, you must reduce the basis of the home (but not below zero) by the amount of the canceled qualified principal residence indebtedness excluded from income. Enter the amount of the basis reduction on line 10b of Form 982.

For more details on determining the basis of your main home, see Pub. 523, Selling Your Home.

## Bankruptcy and Insolvency

**No tax attributes other than basis of personal-use property.** If the canceled debt you are excluding isn't qualified principal residence indebtedness and you have no tax attributes other than the adjusted basis of personal-use property (see the list of seven tax attributes, later), you must reduce the basis of the personal-use property you held at the beginning of 2016 (in proportion to adjusted basis). Personal-use property is any property that isn't used in your trade or business nor held for investment (such as your home, home furnishings, and car). Include on line 10a of Form 982 the smallest of:

- The bases of your personal-use property held at the beginning of 2016,
- The amount of canceled nonbusiness debt (other than qualified principal residence indebtedness) that you are excluding from income on line 2 of Form 982, or
- The excess of the total bases of the property and the amount of money you held immediately after the cancellation over your

total liabilities immediately after the cancellation.

For general information about the basis of property, see Pub. 551.

***Example.*** In 2013, Mya bought a car for personal use. The cost of the car was $12,000. Mya put down $2,000 and took out a loan of $10,000 to buy the car. The loan was a recourse loan, meaning that Mya was personally liable for the full amount of the debt.

On December 7, 2015, when the balance of the loan was $8,500, the lender repossessed and sold the car because Mya had stopped making payments on the loan. The FMV of the car was $7,000 at the time the lender repossessed and sold it. The lender applied the $7,000 it received on the sale of the car against Mya's loan and forgave the remaining loan balance of $1,500 ($8,500 outstanding balance immediately before the repossession minus the $7,000 FMV of the car).

Mya's only other assets at the time of the cancellation are the furniture in her apartment which has a basis of $5,000 and an FMV of $3,000, jewelry with a basis of $500 and an FMV of $1,000, and a $600 balance in her savings account. Thus, the FMV of Mya's total assets immediately before the cancellation was $11,600 ($7,000 car plus $3,000 furniture plus $1,000 jewelry plus $600 savings). Mya also had an outstanding student loan balance of $6,000 immediately before the cancellation, bringing her total liabilities at that time to $14,500 ($8,500 balance on car loan plus $6,000 student loan balance). Other than the car, which was repossessed, Mya held all of these assets at the beginning of 2016. The FMV and bases of the assets remained the same at the beginning of 2016.

Mya received a 2015 Form 1099-C showing $1,500 in box 2 (amount of debt that was canceled) and $7,000 in box 7 (FMV of the property). Mya can exclude all $1,500 of canceled debt from income because at the time of the cancellation, she was insolvent to the extent of $2,900 ($14,500 of total liabilities immediately before the cancellation minus $11,600 FMV of total assets at that time).

Mya checks box 1b on Form 982 and enters $1,500 on line 2. She enters $100 on line 10a, the smallest of:

- The $5,500 bases of her personal-use property held at the beginning of 2016 ($5,000 furniture plus $500 jewelry),
- The $1,500 nonbusiness debt she is excluding from income on line 2 of Form 982, or
- The $100 excess of the total bases of the property and the amount of money Mya held immediately after the cancellation over her total liabilities at that time ($5,500 bases of property held immediately after the cancellation plus $600 savings minus $6,000 student loan).

Mya must reduce her bases in each item of property in proportion to her total adjusted bases in all her property. Thus, she reduces her basis in the furniture by $91 ($100 x $5,000/$5,500) and her basis in the jewelry by $9 ($100 x $500/$5,500).

**All other tax attributes.** If the canceled debt is excluded by reason of the bankruptcy or insolvency exclusions, you must use the excluded debt to reduce the following tax attributes (but not below zero) in the order listed unless you elect to reduce the basis of depreciable property first, as explained later. Reduce your tax attributes after you figure your income tax liability for 2015.

1. ***Net operating loss (NOL).*** First reduce any 2015 NOL and then reduce any NOL carryover to 2015 (after taking into account any amount used to reduce 2015 taxable income) in the order of the tax years from which the carryovers arose, starting with the earliest year. Reduce the NOL or carryover by one dollar for each dollar of excluded canceled debt.

2. ***General business credit carryover.*** Reduce the credit carryover to or from 2015. Reduce the credit carryovers to 2015 in the order in which they are taken into account for 2015. For more information on the credit ordering rules for 2015, see the Instructions for Form 3800, General Business Credit. Reduce the carryover by 33⅓ cents for each dollar of excluded canceled debt.

3. ***Minimum tax credit.*** Reduce the minimum tax credit available at the beginning of 2016. Reduce the credit by 33⅓ cents for each dollar of excluded canceled debt.

4. ***Net capital loss and capital loss carryovers.*** First reduce any 2015 net capital loss and then any capital loss carryover to 2015 (after taking into account any amount used to reduce 2015 taxable income) in the order of the tax years from which the carryovers arose, starting with the earliest year. Reduce the net capital loss or carryover by one dollar for each dollar of excluded canceled debt.

5. ***Basis.*** Reduce the bases of the property you hold at the beginning of 2016 in the following order (and, within each category, in proportion to adjusted basis).

   a. Real property used in your trade or business or held for investment (other than real property held for sale to customers in the ordinary course of business) if it secured the canceled debt.

   b. Personal property used in your trade or business or held for investment (other than inventory and accounts and notes receivable) if it secured the canceled debt.

   c. Any other property used in your trade or business or held for investment (other than inventory, accounts receivable, notes receivable, and real property held for sale to customers in the ordinary course of business).

   d. Inventory, accounts receivable, notes receivable, and real property held primarily for sale to customers in the ordinary course of business.

   e. Personal-use property (property not used in your trade or business nor held for investment).

Reduce the basis by one dollar for each dollar of excluded canceled debt. However, the reduction can't be more than the excess of the total bases of the property and the amount of money you held immediately after the debt cancellation over your total liabilities immediately after the cancellation.

For allocation rules that apply to basis reductions for multiple canceled debts, see Regulations section 1.1017-1(b)(2). Also see *Election to reduce the basis of depreciable property before reducing other tax attributes*, later.

6. ***Passive activity loss and credit carryovers.*** Reduce the passive activity loss and credit carryovers from 2015. Reduce the loss carryover by one dollar for each dollar of excluded canceled debt. Reduce the credit carryover by 33⅓ cents for each dollar of excluded canceled debt.

7. ***Foreign tax credit.*** Reduce the credit carryover to or from 2015. Reduce the credit carryovers to 2015 in the order in which they are taken into account for 2015. Reduce the carryover by 33⅓ cents for each dollar of excluded canceled debt.

**Election to reduce the basis of depreciable property before reducing other tax attributes.** You can elect to reduce the bases of depreciable property you held at the beginning of 2016 before reducing other tax attributes. You can reduce the basis of this property by all or part of the canceled debt. Basis of property is reduced in the following order.

1. Depreciable real property used in your trade or business or held for investment that secured the canceled debt.

2. Depreciable personal property used in your trade or business or held for investment that secured the canceled debt.

3. Other depreciable property used in your trade or business or held for investment.

4. Real property held primarily for sale to customers if you elect to treat it as if it were depreciable property on Form 982.

Basis reduction is limited to the total adjusted bases of all your depreciable property. Depreciable property for this purpose means any property subject to depreciation or amortization, but only if a reduction of basis will reduce the depreciation or amortization otherwise allowable for the period immediately following the basis reduction. If the amount of canceled debt excluded from income is more than the total bases in depreciable property, you must use the excess to reduce the other tax attributes in the order described earlier under *All other tax attributes*. In figuring the limit on the basis reduction in (5), *Basis*, use the remaining adjusted bases of your properties after making this election. See Form 982 for information on how to make this election. The election can be revoked only with IRS consent.

**Recapture of basis reductions.** If you reduce the basis of property under these provisions and later sell or otherwise dispose of the property at a gain, the part of the gain due to this

basis reduction is taxable as ordinary income under the depreciation recapture provisions. Treat any property that isn't section 1245 or section 1250 property as section 1245 property. For section 1250 property, determine the depreciation adjustments that would have resulted under the straight line method as if there were no basis reduction for debt cancellation. See Pub. 544 or Pub. 225, Farmer's Tax Guide, for more details on sections 1245 and 1250 property and the recapture of gain as ordinary income.

## Qualified Farm Indebtedness

If you exclude canceled debt from income under both the insolvency exclusion and the exclusion for qualified farm indebtedness, you must first reduce your tax attributes by the amount excluded under the insolvency exclusion. Then reduce your remaining tax attributes (but not below zero) by the amount of canceled debt that qualifies for the farm debt exclusion.

In most cases, when reducing your tax attributes for canceled qualified farm indebtedness excluded from income, reduce them in the same order explained under *Bankruptcy and Insolvency*, earlier. However, don't follow the rules in item (5), *Basis*. Instead, reduce only the basis of qualified property. Qualified property is any property you use or hold for use in your trade or business or for the production of income. Reduce the basis of qualified property in the following order.

1. Depreciable qualified property. You can elect on Form 982 to treat real property held primarily for sale to customers as if it were depreciable property.

2. Land that is qualified property and is used or held for use in your farming business.

3. Other qualified property.

## Qualified Real Property Business Indebtedness

If you make an election to exclude canceled qualified real property business debt from income, you must reduce the basis of your depreciable real property (but not below zero) by the amount of canceled qualified real property business debt excluded from income. The basis reduction is made at the beginning of 2016. However, if you dispose of your depreciable real property before the beginning of 2016, you must reduce its basis (but not below zero) immediately before the disposition. Enter the amount of the basis reduction on line 4 of Form 982.

**Example 1.** In 2010, Curt bought a retail store for use in a business he operated as a sole proprietorship. Curt made a $20,000 down payment and financed the remaining $200,000 of the purchase price with a bank loan. The bank loan was a recourse loan and was secured by the property. He used the property in his business continuously since he bought it and had no other debt secured by that depreciable real property. In addition to the retail store, Curt owned depreciable equipment and furniture with an adjusted basis of $50,000. His

tax attributes included the basis of depreciable property, a net operating loss, and a capital loss carryover to 2015.

Curt's business encountered financial difficulties in 2015. On September 25, 2015, the bank financing the retail store loan entered into a workout agreement with him under which it canceled $20,000 of the principal amount of the debt. Immediately before the bank entered into the workout agreement, Curt was insolvent to the extent of $12,000. At that time, the outstanding principal balance on the retail store loan was $185,000, the FMV of the store was $165,000 and the adjusted basis was $210,000 ($220,000 cost minus $10,000 accumulated depreciation). The bank sent him a 2015 Form 1099-C showing canceled debt of $20,000 in box 2.

Curt must apply the insolvency exclusion before applying the exclusion for canceled qualified real property business indebtedness. Under the insolvency exclusion rules, he can exclude $12,000 of the canceled debt from income. Curt elects to reduce his basis of depreciable property before reducing other tax attributes. Under that election, he must first reduce the basis in the depreciable real property used in his trade or business that secured the canceled debt. After the basis reduction, the adjusted basis in that property is $198,000 ($210,000 adjusted basis before entering into the workout agreement minus $12,000 of canceled debt excluded from income under the insolvency exclusion).

Curt may be able to exclude the remaining $8,000 of canceled debt from income under the exclusion for qualified real property business indebtedness, if he elects to apply it. The amount he can exclude is subject to both the following limits.

* The excess, if any, of the outstanding principal amount of the qualified real property business indebtedness (immediately before the cancellation) over the FMV (immediately before the cancellation) of the real property securing the debt ($185,000 minus $165,000, which equals $20,000).

* The total adjusted basis (determined after the reduction for the canceled debt excluded under the insolvency exclusion) of depreciable real property held immediately before the cancellation ($198,000).

Since both limits are more than the $8,000 of remaining canceled debt ($20,000 minus $12,000), Curt can exclude $8,000 under the qualified real property business indebtedness exclusion.

Curt checks the boxes on lines 1b and 1d of Form 982. He completes Part II of Form 982 to reduce his basis in the depreciable real property by $8,000, the amount of the canceled debt excluded from income. He enters $8,000 on line 4 and $12,000 on line 5.

**Example 2.** Bob owns depreciable real property used in his retail business. His adjusted basis in the property is $145,000. The FMV of the property is $120,000. The property is subject to $134,000 of recourse debt which is secured by the property. Bob had no other debt secured by that depreciable real property. Bob also had a $15,000 NOL in 2015.

During 2015, Bob entered into a workout agreement with the lender under which the lender canceled $14,000 of the debt on the real property used in his business. Immediately before the cancellation, Bob was insolvent to the extent of $10,000. He excludes $10,000 of the canceled debt from income under the insolvency exclusion. As a result of that exclusion, he reduced his NOL by $10,000.

Bob may be able to exclude the remaining $4,000 of canceled debt from income under the qualified real property business indebtedness exclusion, if he elects to apply it. The amount he can exclude is subject to both of the following limits.

* The excess, if any, of the outstanding principal amount of the qualified real property business debt (immediately before the cancellation) over the FMV (immediately before the cancellation) of the business real property securing the debt (the excess of $134,000 over $120,000, which equals $14,000).

* The total adjusted bases of depreciable real property held immediately before the cancellation of debt ($145,000).

Since both limits ($14,000 and $145,000) are more than the remaining $4,000 of canceled debt, Bob can also exclude the remaining $4,000 of canceled debt.

Bob checks the boxes on lines 1b and 1d of Form 982 and enters $14,000 on line 2. Bob completes Part II of Form 982 to reduce his basis of depreciable real property and his 2015 NOL by entering $4,000 on line 4 and $10,000 on line 6. None of the canceled debt is included in his income.

---

# 2.

---

# Foreclosures and Repossessions

If you don't make payments you owe on a loan secured by property, the lender may foreclose on the loan or repossess the property. The foreclosure or repossession is treated as a sale from which you may realize gain or loss. This is true even if you voluntarily return the property to the lender. If the outstanding loan balance was more than the FMV of the property and the lender cancels all or part of the remaining loan balance, you also may realize ordinary income from the cancellation of debt. You must report this income on your return unless certain exceptions or exclusions apply. See chapter 1 for more details.

Table 1-1. **Worksheet for Foreclosures and Repossessions** *Keep for Your Records* 

| Part 1. Complete Part 1 only if you were personally liable for the debt (even if none of the debt was canceled). Otherwise, go to Part 2. | |
|---|---|
| 1. Enter the amount of outstanding debt immediately before the transfer of property reduced by any amount for which you remain personally liable immediately after the transfer of property  . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| 2. Enter the fair market value of the transferred property  . . . . . . . . . . . . . . . . | _____ |
| 3. **Ordinary income from the cancellation of debt upon foreclosure or repossession.*** Subtract line 2 from line 1. If less than zero, enter zero. Next, go to Part 2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Part 2. Gain or loss from foreclosure or repossession. | |
| 4. Enter the **smaller** of line 1 or line 2. If you didn't complete Part 1 (because you weren't personally liable for the debt), enter the amount of outstanding debt immediately before the transfer of property  . . . . . . . . . . . . . . . . . . . . . | _____ |
| 5. Enter any proceeds you received from the foreclosure sale  . . . . . . . . . . . . . . | _____ |
| 6. Add line 4 and line 5  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| 7. Enter the adjusted basis of the transferred property  . . . . . . . . . . . . . . . . . . | _____ |
| 8. **Gain or loss from foreclosure or repossession.** Subtract line 7 from line 6  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| * The income may not be taxable. See chapter 1 for more details. | |

**Borrower's gain or loss.** You figure and report gain or loss from a foreclosure or repossession in the same way as gain or loss from a sale. The gain is the difference between the amount realized and your adjusted basis in the transferred property (amount realized minus adjusted basis). The loss is the difference between your adjusted basis in the transferred property and the amount realized (adjusted basis minus amount realized). For more information on figuring gain or loss from sale of property, see *Gain or Loss From Sales and Exchanges* in Pub. 544.

 *You can use Table 1-1 to figure your ordinary income from the cancellation of debt and your gain or loss from a foreclosure or repossession.*

**Amount realized and ordinary income on a recourse debt.** If you are personally liable for the debt, the amount realized on the foreclosure or repossession includes the smaller of:

- The outstanding debt immediately before the transfer reduced by any amount for which you remain personally liable immediately after the transfer, or
- The FMV of the transferred property.

The amount realized also includes any proceeds you received from the foreclosure sale. If the FMV of the transferred property is less than the total outstanding debt immediately before the transfer reduced by any amount for which you remain personally liable immediately after the transfer, the difference is ordinary income from the cancellation of debt. You must report this income on your return unless certain exceptions or exclusions apply. See chapter 1 for more details.

**Example 1.** Tara bought a new car for $15,000. She made a $2,000 downpayment and borrowed the remaining $13,000 from the dealer's credit company. Tara is personally liable for the loan (recourse debt) and the car is

pledged as security for the loan. On August 1, 2015, the credit company repossessed the car because Tara had stopped making loan payments. The balance due after taking into account the payments Tara made was $10,000. The FMV of the car when it was repossessed was $9,000. On November 16, 2015, the credit company forgave the remaining $1,000 balance on the loan due to insufficient assets.

In this case, the amount Tara realizes is $9,000. This is the smaller of:

- The $10,000 outstanding debt immediately before the repossession reduced by the $1,000 for which she remains personally liable immediately after the repossession ($10,000 − $1,000 = $9,000), or
- The $9,000 FMV of the car.

Tara figures her gain or loss on the repossession by comparing the $9,000 amount realized with her $15,000 adjusted basis. She has a $6,000 nondeductible loss. After the cancellation of the remaining balance on the loan in November, Tara also has ordinary income from cancellation of debt in the amount of $1,000 (the remaining balance on the $10,000 loan after the $9,000 amount satisfied by the FMV of the repossessed car). Tara must report this $1,000 on her return unless one of the exceptions or exclusions described in chapter 1 applies.

**Example 2.** Lili paid $200,000 for her home. She made a $15,000 downpayment and borrowed the remaining $185,000 from a bank. Lili is personally liable for the mortgage loan and the house secures the loan. In 2015, the bank foreclosed on the mortgage because Lili stopped making payments. When the bank foreclosed the mortgage, the balance due was $180,000, the FMV of the house was $170,000, and Lili's adjusted basis was $175,000 due to a casualty loss she had deducted. At the time of the foreclosure, the bank forgave $2,000 of the $10,000 debt in excess of the FMV ($180,000 minus $170,000). She remained personally liable for the $8,000 balance.

In this case, Lili has ordinary income from the cancellation of debt in the amount of $2,000. The $2,000 income from the cancellation of debt is figured by subtracting the $170,000 FMV of the house from the $172,000 difference between her total outstanding debt immediately before the transfer of property and the amount for which she remains personally liable immediately after the transfer ($180,000 minus $8,000). She is able to exclude the $2,000 of canceled debt from her income under the qualified principal residence indebtedness rules discussed earlier.

Lili must also determine her gain or loss from the foreclosure. In this case, the amount that she realizes is $170,000. This is the smaller of: (a) the $180,000 outstanding debt immediately before the transfer reduced by the $8,000 for which she remains personally liable immediately after the transfer ($180,000 − $8,000 = $172,000) or (b) the $170,000 FMV of the house. Lili figures her gain or loss on the foreclosure by comparing the $170,000 amount realized with her $175,000 adjusted basis. She has a $5,000 nondeductible loss.

**Amount realized on a nonrecourse debt.** If you aren't personally liable for repaying the debt secured by the transferred property, the amount you realize includes the full amount of the outstanding debt immediately before the transfer. This is true even if the FMV of the property is less than the outstanding debt immediately before the transfer.

**Example 1.** Tara bought a new car for $15,000. She made a $2,000 downpayment and borrowed the remaining $13,000 from the dealer's credit company. Tara isn't personally liable for the loan (nonrecourse), but pledged the new car as security for the loan.

On August 1, 2015, the credit company repossessed the car because Tara had stopped making loan payments. The balance due after taking into account the payments Tara made was $10,000. The FMV of the car when it was repossessed was $9,000.

The amount Tara realized on the repossession is $10,000. That is the outstanding amount of debt immediately before the repossession, even though the FMV of the car is less than $10,000. Tara figures her gain or loss on the repossession by comparing the $10,000 amount realized with her $15,000 adjusted basis. Tara has a $5,000 nondeductible loss.

**Example 2.** Lili paid $200,000 for her home. She made a $15,000 downpayment and borrowed the remaining $185,000 from a bank. She isn't personally liable for the loan, but grants the bank a mortgage.

The bank foreclosed on the mortgage because Lili stopped making payments. When the bank foreclosed on the mortgage, the balance due was $180,000, the FMV of the house was $170,000, and Lili's adjusted basis was $175,000 due to a casualty loss she had deducted.

The amount Lili realized on the foreclosure is $180,000, the outstanding debt immediately before the foreclosure. She figures her gain or loss by comparing the $180,000 amount realized with her $175,000 adjusted basis. Lili has a $5,000 realized gain. See Pub. 523, Selling

Your Home, to figure and report any taxable amount.

**Forms 1099-A and 1099-C.** A lender who acquires an interest in your property in a foreclosure or repossession should send you Form 1099-A, Acquisition or Abandonment of Secured Property, showing information you need to figure your gain or loss. However, if the lender also cancels part of your debt and must file Form 1099-C, the lender can include the information about the foreclosure or repossession on that form instead of on Form 1099-A. The lender must file Form 1099-C and send you a copy if the amount of debt canceled is $600 or more and the lender is a financial institution, credit union, federal government agency, or other applicable entity as discussed earlier in chapter 1. For foreclosures or repossessions occurring in 2015, these forms should be sent to you by February 1, 2016.

# 3.

# Abandonments

You abandon property when you voluntarily and permanently give up possession and use of the property with the intention of ending your ownership but without passing it on to anyone else. Whether an abandonment has occurred is determined in light of all the facts and circumstances. You must both show an intention to abandon the property and affirmatively act to abandon the property.

A voluntary conveyance of the property in lieu of foreclosure isn't an abandonment and is treated as the exchange of property to satisfy a debt. For more information, see *Sales and Exchanges* in Pub. 544.

The tax consequences of abandonment of property that secures a debt depend on whether you were personally liable for the debt (recourse debt) or weren't personally liable for the debt (nonrecourse debt).


**TIP** See Pub. 544 if you abandoned property that didn't secure debt. This publication only discusses the tax consequences of abandoning property that secured a debt.

**Abandonment of property securing recourse debt.** In most cases, if you abandon property that secures debt for which you are personally liable (recourse debt), you don't have gain or loss until the later foreclosure is completed. For details on figuring gain or loss on the foreclosure, see chapter 2.

    *Example 1—abandonment of personal-use property securing recourse debt.* In 2011, Anne purchased a home for $200,000. She borrowed the entire purchase price, for which she was personally liable, and gave the bank a mortgage on the home. In 2015, Anne

lost her job and was unable to continue making her mortgage loan payments. Because her mortgage loan balance was $185,000 and the FMV of her home was only $150,000, Anne decided to abandon her home by permanently moving out on August 1, 2015. Because Anne was personally liable for the debt and the bank didn't complete a foreclosure of the property in 2015, Anne has neither gain nor loss in tax year 2015 from abandoning the home. If the bank sells the house at a foreclosure sale in 2016, Anne will have to figure her gain or nondeductible loss for tax year 2016 as discussed earlier in chapter 2.

    *Example 2—abandonment of business or investment property securing recourse debt.* In 2011, Sue purchased business property for $200,000. She borrowed the entire purchase price, for which she was personally liable, and gave the lender a security interest in the property. In 2015, Sue was unable to continue making her loan payments. Because her loan balance was $185,000 and the FMV of the property was only $150,000, Sue abandoned the property on August 1, 2015. Because Sue was personally liable for the debt and the lender didn't complete a foreclosure of the property in 2015, Sue has neither gain nor loss in tax year 2015 from abandoning the property. If the lender sells the property at a foreclosure sale in 2016, Sue will have to figure her gain or deductible loss for tax year 2016 as discussed earlier in chapter 2.

**Abandonment of property securing nonrecourse debt.** If you abandon property that secures debt for which you aren't personally liable (nonrecourse debt), the abandonment is treated as a sale or exchange.

    The amount you realize on the abandonment of property that secured nonrecourse debt is the amount of the nonrecourse debt. If the amount you realize is more than your adjusted basis, then you have a gain. If your adjusted basis is more than the amount you realize, then you have a loss. For more information on how to figure gain and loss, see *Gain or Loss From Sales and Exchanges* in Pub. 544.

    Loss from abandonment of business or investment property is deductible as a loss. The character of the loss depends on the character of the property. The amount of deductible capital loss may be limited. For more information, see *Treatment of Capital Losses* in Pub. 544. You can't deduct any loss from abandonment of your home or other property held for personal use.

    *Example 1—abandonment of personal-use property securing nonrecourse debt.* In 2011, Timothy purchased a home for $200,000. He borrowed the entire purchase price, for which he wasn't personally liable, and gave the lender a mortgage on the home. In 2015, Timothy lost his job and was unable to continue making his mortgage loan payments. Because his mortgage loan balance was $185,000 and the FMV of his home was only $150,000, Timothy decided to abandon his home by permanently moving out on August 1, 2015. Because Timothy wasn't personally liable for the debt, the abandonment is treated as a sale or exchange of the home in tax year 2015.

Timothy's amount realized is $185,000 and his adjusted basis in the home is $200,000. Timothy has a $15,000 nondeductible loss in tax year 2015. (Had Timothy's adjusted basis been less than the amount realized, Timothy would have had a gain that he would have to include in gross income.) The bank sells the house at a foreclosure sale in 2016. Timothy has neither gain nor loss from the foreclosure sale. Because he wasn't personally liable for the debt, he also has no cancellation of debt income.

    *Example 2—abandonment of business or investment property securing nonrecourse debt.* In 2011, Robert purchased business property for $200,000. He borrowed the entire purchase price, for which he wasn't personally liable, and gave the lender a security interest in the property. In 2015, Robert was unable to continue making his loan payments. Because his loan balance was $185,000 and the FMV of the property was only $150,000, Robert decided to abandon the property on August 1, 2015. Because Robert wasn't personally liable for the debt, the abandonment is treated as a sale or exchange of the property in tax year 2015. Robert's amount realized is $185,000 and his adjusted basis in the property is $180,000 (as a result of $20,000 of depreciation deductions on the property). Robert has a $5,000 gain in tax year 2015. (Had Robert's adjusted basis been greater than the amount realized, he would have had a deductible loss.) The lender sells the property at a foreclosure sale in 2016. Robert has neither gain nor loss from the foreclosure sale. Because he wasn't personally liable for the debt, he also has no cancellation of debt income.

**Canceled debt.** If the abandoned property secures a debt for which you are personally liable and the debt is canceled, you will realize ordinary income equal to the canceled debt. This income is separate from any amount realized from abandonment of the property. You must report this income on your return unless one of the exceptions or exclusions described in chapter 1 applies.

**Forms 1099-A and 1099-C.** In most cases, if you abandon
- real property (such as a home),
- intangible property, or
- tangible personal property held (wholly or partly) for use in a trade or business or for investment,

that secures a loan and the lender knows the property has been abandoned, the lender should send you Form 1099-A showing information you need to figure your gain or loss from the abandonment. Also, if your debt is canceled and the lender must file Form 1099-C, the lender can include the information about the abandonment on that form instead of on Form 1099-A. The lender must file Form 1099-C and send you a copy if the amount of debt canceled is $600 or more and the lender is a financial institution, credit union, federal government agency, or other applicable entity as discussed earlier in chapter 1.

    For abandonments of property and debt cancellations occurring in 2015, these forms should be sent to you by February 1, 2016.

# 4.

# How To Get Tax Help

If you have questions about a tax issue, need help preparing your tax return, or want to download free publications, forms, or instructions, go to IRS.gov and find resources that can help you right away.

**Preparing and filing your tax return.** Find free options to prepare and file your return on IRS.gov or in your local community if you qualify.

- Go to IRS.gov and click on the Filing tab to see your options.
- Enter "Free File" in the search box to see whether you can use brand-name software to prepare and e-file your federal tax return for free.
- Enter "VITA" in the search box, download the free IRS2Go app, or call 1-800-906-9887 to find the nearest Volunteer Income Tax Assistance or Tax Counseling for the Elderly (TCE) location for free tax preparation.
- Enter "TCE" in the search box, download the free IRS2Go app, or call 1-888-227-7669 to find the nearest Tax Counseling for the Elderly location for free tax preparation.

The Volunteer Income Tax Assistance (VITA) program offers free tax help to people who generally make $54,000 or less, persons with disabilities, the elderly, and limited-English-speaking taxpayers who need help preparing their own tax returns. The Tax Counseling for the Elderly (TCE) program offers free tax help for all taxpayers, particularly those who are 60 years of age and older. TCE volunteers specialize in answering questions about pensions and retirement-related issues unique to seniors.

 **Getting answers to your tax law questions.** On IRS.gov get answers to your tax questions anytime, anywhere.

- Go to *www.irs.gov/Help-&-Resources* for a variety of tools that will help you with your taxes.
- Enter "ITA" in the search box on IRS.gov for the Interactive Tax Assistant, a tool that will ask you questions on a number of tax law topics and provide answers. You can print the entire interview and the final response.
- Enter "Pub 17" in the search box on IRS.gov to get Pub. 17, Your Federal Income Tax for Individuals, which features details on tax-saving opportunities, 2015 tax changes, and thousands of interactive links to help you find answers to your questions.
- Additionally, you may be able to access tax law information in your electronic filing software.

**Tax forms and publications.** You can download or print all of the forms and publications you may need on *www.irs.gov/formspubs*. Otherwise, you can go to *www.irs.gov/orderforms* to place an order and have forms mailed to you. You should receive your order within 10 business days.

**Direct deposit.** The fastest way to receive a tax refund is by combining direct deposit and IRS e-file. Direct deposit securely and electronically transfers your refund directly into your financial account. Eight in 10 taxpayers use direct deposit to receive their refund. The majority of refunds are received within 21 days or less.

**Getting a transcript or copy of a return.**
- Go to IRS.gov and click on "Get Transcript of Your Tax Records" under "Tools."
- Call the transcript toll-free line at 1-800-908-9946.
- Mail Form 4506-T or Form 4506T-EZ (both available on IRS.gov).

**Using online tools to help prepare your return.** Go to IRS.gov and click on the Tools bar to use these and other self-service options.
- The *Earned Income Tax Credit Assistant* determines if you are eligible for the EIC.
- The *Online EIN Application* helps you get an employer identification number.
- The *IRS Withholding Calculator* estimates the amount you should have withheld from your paycheck for federal income tax purposes.
- The *Electronic Filing PIN Request* helps to verify your identity when you do not have your prior year AGI or prior year self-selected PIN available.
- The *First Time Homebuyer Credit Account Look-up* tool provides information on your repayments and account balance.

For help with the alternative minimum tax, go to IRS.gov/AMT.

**Understanding identity theft issues.**
- Go to *www.irs.gov/uac/Identity-Protection* for information and videos.
- If your SSN has been lost or stolen or you suspect you are a victim of tax-related identity theft, visit *www.irs.gov/identitytheft* to learn what steps you should take.

**Checking on the status of a refund.**
- Go to *www.irs.gov/refunds*.
- Download the free IRS2Go app to your smart phone and use it to check your refund status.
- Call the automated refund hotline at 1-800-829-1954.

**Making a tax payment.** The IRS uses the latest encryption technology so electronic payments are safe and secure. You can make electronic payments online, by phone, or from a mobile device. Paying electronically is quick, easy, and faster than mailing in a check or money order. Go to *www.irs.gov/payments* to make a payment using any of the following options.
- *IRS Direct Pay* (for individual taxpayers who have a checking or savings account).

- **Debit or credit card** (approved payment processors online or by phone).
- **Electronic Funds Withdrawal** (available during e-file).
- **Electronic Federal Tax Payment System** (best option for businesses; enrollment required).
- **Check or money order.**

- IRS2Go provides access to mobile-friendly payment options like IRS Direct Pay, offering you a free, secure way to pay directly from your bank account. You can also make debit or credit card payments through an approved payment processor. Simply download IRS2Go from Google Play, the Apple App Store, or the Amazon Appstore, and make your payments anytime, anywhere.

**What if I can't pay now?** Click on the "Pay Your Tax Bill" icon on IRS.gov for more information about these additional options.
- Apply for an *online payment agreement* to meet your tax obligation in monthly installments if you cannot pay your taxes in full today. Once you complete the online process, you will receive immediate notification of whether your agreement has been approved.
- An offer in compromise allows you to settle your tax debt for less than the full amount you owe. Use the *Offer in Compromise Pre-Qualifier* to confirm your eligibility.

**Checking the status of an amended return.** Go to IRS.gov and click on the Tools tab and then *Where's My Amended Return?*

**Understanding an IRS notice or letter.** Enter "Understanding your notice" in the search box on IRS.gov to find additional information about your IRS notice or letter.

**Visiting the IRS.** Locate the nearest Taxpayer Assistance Center using the Office Locator tool on IRS.gov. Enter "office locator" in the search box. Or choose the "Contact Us" option on the IRS2Go app and search Local Offices. Before you visit, use the Locator tool to check hours and services available.

**Watching IRS videos.** The IRS Video portal *www.irsvideos.gov* contains video and audio presentations for individuals, small businesses, and tax professionals. You'll find video clips of tax topics, archived versions of panel discussions and Webinars, and audio archives of tax practitioner phone forums.

**Getting tax information in other languages.** For taxpayers whose native language is not English, we have the following resources available.

1. Taxpayers can find information on IRS.gov in the following languages.

   a. *Spanish*.
   b. *Chinese*.
   c. *Vietnamese*.
   d. *Korean*.
   e. *Russian*.

2. The IRS Taxpayer Assistance Centers provide over-the-phone interpreter service in over 170 languages, and the service is available free to taxpayers.

# The Taxpayer Advocate Service Is Here To Help You

## What is the Taxpayer Advocate Service?

The Taxpayer Advocate Service (TAS) is an *independent* organization within the Internal Revenue Service that helps taxpayers and protects taxpayer rights. Our job is to ensure that every taxpayer is treated fairly and that you know and understand your rights under the *Taxpayer Bill of Rights*.

## What Can the Taxpayer Advocate Service Do For You?

We can help you resolve problems that you can't resolve with the IRS. And our service is free. If you qualify for our assistance, you will be assigned to one advocate who will work with you throughout the process and will do everything possible to resolve your issue. TAS can help you if:

- Your problem is causing financial difficulty for you, your family, or your business,
- You face (or your business is facing) an immediate threat of adverse action, or
- You've tried repeatedly to contact the IRS but no one has responded, or the IRS hasn't responded by the date promised.

## How Can You Reach Us?

We have offices *in every state, the District of Columbia, and Puerto Rico*. Your local advocate's number is in your local directory and at *www.taxpayeradvocate.irs.gov*. You can also call us at 1-877-777-4778.

## How Can You Learn About Your Taxpayer Rights?

The Taxpayer Bill of Rights describes ten basic rights that all taxpayers have when dealing with the IRS. Our Tax Toolkit at *www.taxpayeradvocate.irs.gov* can help you understand *what these rights mean to you* and how they apply. These are *your* rights. Know them. Use them.

## How Else Does the Taxpayer Advocate Service Help Taxpayers?

TAS works to resolve large-scale problems that affect many taxpayers. If you know of one of these broad issues, please report it to us at *www.irs.gov/sams*.

## Low Income Taxpayer Clinics

Low Income Taxpayer Clinics (LITCs) serve individuals whose income is below a certain level and need to resolve tax problems such as audits, appeals, and tax collection disputes. Some clinics can provide information about taxpayer rights and responsibilities in different languages for individuals who speak English as a second language. To find a clinic near you, visit *www.irs.gov/litc* or see IRS Publication 4134, *Low Income Taxpayer Clinic List*.

## Index


To help us develop a more useful index, please let us know if you have ideas for index entries. See "Comments and Suggestions" in the "Introduction" for the ways you can reach us.

**1099-C** 4
**501(c)(3) organizations** 5

**A**
**Abandonments** 13
   Canceled debt 13
**Assistance** (*See* Tax help)

**B**
**Bankruptcy** 5
   Reduction of tax attributes 9
**Business:**
   Real property indebtedness 7

**C**
**Canceled debt** 4
   Exceptions:
      Deductible debt 5
      Gifts 4
      Price reduced after
         purchase 5
      Student loans 4
   Exclusions:
      Bankruptcy 5
      Insolvency 5
      Qualified farm
         indebtedness 6
      Qualified principal residence
         indebtedness 9
      Qualified real property
         business indebtedness 7
   Income from 2

**Co-owners** 4

**D**
**Debts:**
   Stockholder's 4
**Definitions:**
   Adjusted tax attributes 6
   Qualified acquisition
      indebtedness 7
   Qualified farm indebtedness 6
   Qualified principal residence
      indebtedness 9
   Qualified real property business
      indebtedness 7

**E**
**Educational loans** 4
**Exceptions:**
   Home Affordable Modification
      Program 5

**F**
**Farm indebtedness** 6
   Reduction of tax attributes 11
**Foreclosures** 11
**Form:**
   1099-A 13
   1099-C 13

**G**
**Gifts** 4

**H**
**Home Affordable Modification
   Program** 5

**I**
**Identity theft** 14
**Income from canceled debt** 2
**Insolvency** 5
   Reduction of tax attributes 9

**L**
**Limits:**
   Excluded farm debt 6
   Qualified real property business
      indebtedness 7
**Loans:**
   Student 4

**M**
**Missing children, photographs
   of** 1
**Mortgage Debt Relief
   Act** (*See* Qualified Principal
   Residence Indebtedness)

**P**
**Principal residence
   indebtedness** 9
**Publications** (*See* Tax help)

**Q**
**Qualified farm indebtedness** 6
   Reduction of tax attributes 11
**Qualified principal residence
   indebtedness** 9
**Qualified real property business
   indebtedness** 7
   Reduction of tax attributes 11

**R**
**Real property business
   indebtedness** 7
**Recapture:**
   Basis reductions 10
**Repossessions** 11

**S**
**Stockholder debts** 4
**Student loans** 4

**T**
**Tax attributes, reduction of:**
   Bankruptcy 9
   Insolvency 9
   Qualified farm indebtedness 11
   Qualified Principal Residence
      Indebtedness 9
   Qualified real property business
      indebtedness 11
**Tax help** 14

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **1888 Century Park East, Suite 1850, Los Angeles, California 90067**.

On September 18, 2017, I served the foregoing document described as **SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT CAPITAL ONE, N.A.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1888 Century Park East, Suite 1850, Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported.  Said fax transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT DELIVERY:** I caused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees.  The envelope or package was deposited with delivery fees thereon fully prepaid.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ **BY CM/ECF:**  I electronically transmitted a true copy of said document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the aforementioned CM/ECF registrants.

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 18, 2017, at Los Angeles, California.

*/s/ Genevieve Fenster*
_____
Genevieve Fenster

**SERVICE LIST**

Ashley Tuchman, Esq.
Garrett Charity, Esq.
MCCARTHY LAW PLC
4250 North Drinkwater Blvd., Suite 320
Scottsdale, AZ 85251

T: (602) 456-8900
Ashley.tuchman@mccarthylawyer.com
Garrett.charity@mccarthylawyer.com

*Attorneys for Plaintiff, Milan Kunwar*

Thomas P. Quinn, Jr., Esq.
NOKES & QUINN APC
410 Broadway, Ste. 200
Laguna Beach, CA 92651

T: (949) 376-3500
F: (949) 376-3070
tquinn@nokesquinn.com

*Attorneys for Defendant, Equifax Information Services LLC*

DOLL AMIR & ELEY LLP