UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MILAN KUNWAR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAPITAL ONE, N.A., et al.,<br><br>　　　　　Defendants. | Case No. 17-CV-04849-LHK<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

Plaintiff Milan Kunwar ("Plaintiff") sues Defendant Capital One, N.A. ("Defendant") for violation of the federal Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1 *et seq.* Before the Court is Defendant's motion to dismiss. ECF No. 11. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's motion to dismiss.

**I.　　BACKGROUND**

　**A. Factual Background**

Plaintiff alleges that on December 31, 2015, Defendant issued a Form 1099-C for a bank account that Plaintiff had with Defendant. ECF No. 1-1 at 4. Plaintiff states that "the 1099-C is

1
Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

labeled as a 'Cancellation of Debt'" and "thus canceled and discharged the principal balance owed, excluding interest and fees." *Id.* at 5. Plaintiff further alleges that Defendant submitted a Form 1099-C to the Internal Revenue Service ("IRS") and that "[d]ue to the issuance of the Form 1099-C, Plaintiff was obligated to pay income taxes to the IRS on the cancelled debts." *Id.*

Thereafter, Plaintiff states that Defendant "still reported a balance" on Plaintiff's account with Defendant "on Plaintiff's consumer credit reports." *Id.* Specifically, on July 26, 2016, "Plaintiff obtained his consumer credit report from Equifax and discovered that Defendant [] was inaccurately reporting the [a]ccount." *Id.* Thus, on January 6, 2017, "Plaintiff sent a written dispute" to Equifax Information Services, LLC ("Equifax") "regarding the accuracy of the derogatory and erroneous balance information reported by [Defendant] pertaining to the [a]ccount," which Equifax forwarded to Defendant. *Id.* On January 25, 2017, Defendant and Equifax "responded to Plaintiff's written dispute for the [a]ccount without removing the derogatory and erroneous balance information that was identified in Plaintiff's dispute letter for the [a]ccount." *Id.* Based on this, Plaintiff alleges that Defendant "willfully failed to conduct a proper investigation and correct the inaccurate reporting of the [a]ccount to the consumer reporting agencies," and that Defendant "is willfully reporting derogatory and inaccurate information about Plaintiff to the consumer reporting agencies." *Id.* at 5–6.

**B. Procedural History**

On July 18, 2017, Plaintiff filed suit against Defendant and Equifax in the Superior Court of Santa Clara County. *See id.* at 3–8. Plaintiff's complaint asserted two causes of action against Defendant and Equifax, including violation of the federal Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq.*, and violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1 *et seq. Id.* at 6–7.

On August 21, 2017, Equifax removed the case to this Court. ECF No. 1. Then, on August 28, 2017, Plaintiff filed a "Conditional Notice of Settlement as to Equifax Information Services, LLC." ECF No. 10. That same day, Defendant moved to dismiss both causes of action. ECF No. 11 ("Def. Mot."). Plaintiff opposed Defendant's motion to dismiss on September 11,

2

Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

2017, ECF No. 16 ("Pl. Opp."), and Defendant filed a Reply on September 18, 2017. ECF No. 17 ("Reply"). Then, on November 11, 2017, Plaintiff filed a "Notice of Dismissal—As to Equifax Information Services, LLC Only." ECF No. 19. Thus, Defendant is the only defendant left in this case.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183

3
Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

(9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Plaintiff asserts two causes of action against Defendant: a cause of action under the FCRA for failure to conduct a reasonable investigation, and a cause of action under the CCRAA for reporting inaccurate information to credit reporting agencies ("CRAs"). Defendant moves to dismiss both causes of action. The Court addresses each in turn.

**A. FCRA, 15 U.S.C. § 1681s-2b**

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To ensure that credit reports are accurate, the FCRA imposes duties both on credit reporting agencies ("CRAs") and "on the sources that provide credit information to [consumer reporting agencies], called 'furnishers' in the statute." *Id.* In the instant case, Defendant does not dispute that it qualifies as a furnisher under the FCRA.

4

Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

The obligations of furnishers are described in 15 U.S.C. § 1681s-2b. Under that section of the FCRA, furnishers have certain obligations that are triggered when the furnishers receive notice from the CRA that the consumer disputes the information. *Gorman*, 584 F.3d at 1154. Specifically, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency . . . ;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . .
>     (i) modify that item of information;
>     (ii) delete that item of information; or
>     (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

To state a claim against a furnisher of information under § 1681s-2(b), a consumer must allege that "1) the furnisher provided inaccurate information to the [CRA]; 2) the CRA notified the furnisher of a dispute; and 3) the furnisher failed to conduct a reasonable investigation into the accuracy of the disputed information, in light of the information provided to it by the CRA." *Middleton v. Plus Four, Inc.*, 2014 WL 910351, at *3 (D. Nev. Mar. 7, 2014); *see Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155562, at *3 (N.D. Cal. Aug. 2, 2012) ("This [FCRA] claim is insufficiently alleged because Mortimer has not asserted that [the furnisher bank] reported incomplete or inaccurate information in the first plasce."). Thus, even if a furnisher fails to conduct a reasonable investigation or otherwise fails to fulfill its obligations under the FCRA, if a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's FCRA claim fails as a matter of law.

Defendant argues that Plaintiff fails to state a claim for violation of 15 U.S.C. § 1681s-2b because Plaintiff's complaint does not allege enough facts to plausibly suggest that Defendant

reported inaccurate information to the CRAs. Def. Mot. at 7–10. Plaintiff's complaint alleges that Defendant reported an unpaid balance in Plaintiff's account with Defendant to the CRAs, and that this was inaccurate because the underlying debt in Plaintiff's account was cancelled. *See* ECF No. 1-1 at 5. However, Defendant states that the only fact Plaintiff offers to support Plaintiff's allegation that the debt in Plaintiff's account was cancelled is that Defendant issued a Form 1099-C. Def. Mot. at 7. Defendant argues that "issuance of the 1099-C alone is insufficient to establish" that the debt in Plaintiff's account was cancelled. *Id.*

In support of its argument, Defendant points to 26 C.F.R. § 1.6050P-1,[1] which governs when certain creditors must file a Form 1099-C with the IRS. 26 C.F.R. § 1.6050P-1(a) states that "any applicable entity . . . that discharges an indebtedness of any person . . . must file an information return on Form 1099-C with the [IRS]." However, § 1.6050P-1(a) further clarifies that "a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." In turn, § 1.6050P-1(b)(2) lists eight "identifiable event[s]" that trigger the Form 1099-C reporting requirement in §1.6050P-1(a). The first seven identifiable events, § 1.6050P-1(b)(2)(A)–(G), all appear to be actual discharges, cancellations, or extinguishments of indebtedness. In contrast, the eighth identifiable event, § 1.6050P-1(b)(2)(H), is "the expiration of the non-payment testing period, as described in § 1.6050P-1(b)(2)(iv)." By extension, § 1.6050P-1(b)(2)(iv) states that a "non-payment testing period" has expired "if a creditor has not received a payment on an indebtedness at any time" during a period of at least 36 months (called the "testing period"). Section 1.6050P-1(b)(2)(iv) also states that a creditor can rebut the presumption that a "non-payment testing period" has expired if the creditor shows that it "has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the

---

[1] All references to 26 C.F.R. § 1.6050P-1 in this Order are to the version of that regulation that was in effect between July 15, 2014 and November 9, 2016 (when Defendant issued the Form 1099-C in this case), and not to the current version, which took effect on November 10, 2016.

6
Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

calendar year, or if facts and circumstances existing as of January 31 of the calendar year following expiration of the 36-month period indicate that the indebtedness has not been discharged."

In sum, under 26 C.F.R. § 1.6050P-1, any one of eight "identifiable events" can trigger a duty to issue a Form 1099-C. While seven of those "identifiable events" appear to be actual discharges, cancellations, or extinguishments of indebtedness, one event—expiration of a "non-payment testing period"—does not appear to *necessarily* involve any cancellation of debt. Thus, because it is possible that a creditor will have to issue a Form 1099-C even when no debt has been cancelled, Defendant argues that its issuance of a Form 1099-C for the bank account Plaintiff had with Defendant is insufficient to establish that the debt in the account was actually cancelled. Defendant also cites an IRS Information Letter issued in October 2005. *See* I.R.S. Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005). In that letter, the IRS addressed a creditor's concern that filing a Form 1099-C would constitute a written admission that the creditor had discharged debt by stating that "[t]he [IRS] does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." *Id.*

Further, Defendant points to a published decision from the United States Court of Appeals for the Fourth Circuit holding that at the summary judgment stage, a creditor's issuance of a Form 1099-C alone is not enough to create a triable issue of fact as to whether the creditor has cancelled any debt. Def. Mot. at 8–9. In *FDIC v. Cashion*, 720 F.3d 169 (4th Cir. 2013), the Fourth Circuit first noted that "there is no uniformity in how [] courts have resolved the central inquiry" of whether the issuance of a Form 1099-C "create[s] a genuine issue of material fact as to whether [a debt] had been cancelled or assigned." *Id.* at 177. The Fourth Circuit then sided with the "approach taken by a majority of the courts to consider the matter," and stated that "[t]he plain language of [26 C.F.R. § 1.6050P-1] leads us to conclude that filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred." *Id.* at 178–79. *Cashion* is the only published decision from any federal court of

7

Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

appeals that has spoken on this issue.

However, as the Fourth Circuit noted in *Cashion*, some lower courts have reached the opposite conclusion. 720 F.3d at 178; *see, e.g.*, *In re Reed*, 492 B.R. 261, 273 (Bankr. E.D. Tenn. 2013) (stating that "the issuance of a Form 1099-C *reflects* that a financial institution has, in accordance with 26 U.S.C. § 6050P and 26 C.F.R. § 1.6050P-1, discharged an indebtedness, which must then be reported by the debtor as taxable income," and acknowledging that it is "aware that it has adopted the minority view"). Plaintiff urges the Court to follow this line of cases. Pl. Opp. at 8–9. Notably, neither the Ninth Circuit nor any court within this district has ruled on whether, at the summary judgment stage, a creditor's issuance of a Form 1099-C alone creates a genuine issue of fact as to whether the creditor cancelled a debt.

The Court need not adopt a position on this issue at this stage of the proceedings. Even assuming that a creditor's issuance of a Form 1099-C alone cannot create a genuine issue of fact as to whether the creditor cancelled a debt *at the summary judgment stage*, the instant case is still only at the motion to dismiss stage. Thus, unlike at summary judgment, where the parties have had the benefit of discovery, the relevant inquiry here on a motion to dismiss is whether Defendant's issuance of a Form 1099-C is sufficient to *plausibly* suggest that the debt in Plaintiff's account with Defendant was cancelled. Given that seven of the eight "identifiable events" that can trigger a creditor's duty to issue a Form 1099-C are all forms of debt cancellation, and that the eighth "identifiable event" can still involve a cancellation of debt, the Court finds that Defendant's alleged issuance of a Form 1099-C is enough to plausibly suggest that Plaintiff's indebtedness was cancelled.

Defendant asserts one more argument on this issue by relying on a concession made by Plaintiff. In his opposition, Plaintiff states that "[c]ode 'H' is the code listed on this Plaintiff's Form 1099-C received from Defendant Capital One," Pl. Opp. at 4, which indicates that the event that triggered Defendant's obligation to issue a Form 1099-C was the eighth "identifiable event" (listed in 26 § 1.6050P-1(b)(2)(H)): expiration of a "non-payment testing period." As discussed above, expiration of a "non-payment testing period" is the only "identifiable event" that does not

8

Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

*necessarily* involve any actual cancellation of debt. Thus, Defendant argues that because it issued the Form 1099-C in the instant case merely because there was an expiration of a "non-payment testing period," Plaintiff has not alleged sufficient facts to plausibly suggest that Plaintiff's debt was cancelled.

The Court is not persuaded. As an initial matter, although both parties state in their respective briefs that the Form 1099-C in the instant case contained an "H" code, Plaintiff's complaint does not state this fact, and neither party has submitted or attached a copy of the Form 1099-C issued by Defendant. Nonetheless, the Court's finding remains the same even under the assumption that Defendant issued the Form 1099-C in this case merely because of an expiration of a "non-payment testing period." As the Court explained above, under 26 C.F.R. § 1.6050P-1(b)(2)(iv), an expiration of a "non-payment testing period" occurs only if (1) "a creditor has not received a payment on an indebtedness" for at least 36 months; (2) the creditor has not shown that it "has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the calendar year"; and (3) the creditor has not shown that "facts and circumstances . . . indicate that the indebtedness has not been discharged." In other words, an expiration of a "non-payment testing period" means that a debtor has not made any payments on his debt for a long time (at least 3 years), and that the creditor to whom the debt is owed has not come forward with evidence of any attempts to collect on that debt within the past year or any indications that the debt remains outstanding. The existence of all of these factors in conjunction plausibly suggests that the debtor's debt has been cancelled. Thus, the expiration of a "non-payment testing period" is sufficient to plausibly suggest that a debt has been cancelled for purposes of surviving a motion to dismiss, even though expirations of "non-payment testing periods" do not *necessarily* involve debt cancellations.

Finally, Defendant argues that even if Plaintiff has sufficiently alleged that Plaintiff's debt was cancelled, Plaintiff's claim for violation of 15 U.S.C. § 1681s-2b fails because Plaintiff "has not alleged adequately that [Defendant] failed to conduct a reasonable investigation in response to [Plaintiff's] dispute." Def. Mot. at 10. Specifically, Defendant argues that Plaintiff "includes no

9

Case No. 17-CV-04849-LHK
ORDER DENYING MOTION TO DISMISS

1  [factual] allegations whatsoever about" Defendant's investigation, and thus Plaintiff assertion that
2  Defendant failed to conduct a proper investigation is conclusory. *Id.* at 11.

The Court disagrees with Defendant. Although it is true that Plaintiff's complaint does not allege anything about the specific steps Defendant took during its investigation process, as explained above, Plaintiff's complaint sufficiently alleges that (1) the debt in Plaintiff's account with Defendant was cancelled, and thus (2) Defendant's reporting of that debt to the CRAs was inaccurate. Plaintiff's complaint further alleges that Plaintiff brought this alleged inaccuracy to the attention of Equifax and Defendant, and that both Equifax and Defendant responded to Plaintiff's dispute "without removing" the alleged inaccuracy. ECF No. 1-1 at 5. Thus, assuming that Defendant's reporting of Plaintiff's debt to the CRAs was inaccurate—as the Court must do at this stage of the proceedings—Defendant's failure to correct this inaccuracy after investigating it in response to Plaintiff's dispute plausibly suggests that Defendant's investigation into the inaccuracy was unreasonable.

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's first cause of action for violation of 15 U.S.C. § 1681s-2b.

### B. CCRAA, Cal. Civ. Code § 1785.25(a)

Section 1785.25(a) of the CCRAA provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code. § 1785.25(a). The CCRAA provides for a private right of action to enforce this provision. *Id.* §§ 1785.25(g), 1785.31(a). "[B]ecause the CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.'" *Carvalho v. Equifax Info. Servs. LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003)).

Similar to Plaintiff's FCRA claim, Plaintiff asserts that Defendant violated the CCRAA by inaccurately reporting an unpaid balance in Plaintiff's account with Defendant to the CRAs, when

in reality this debt in Plaintiff's account had been cancelled. *See* ECF No. 1-1 at 5. Defendant argues that Plaintiff's CCRAA claim "fails for the same reason as Plaintiff's first claim for violation of the FCRA"—specifically, that Plaintiff has not alleged facts sufficient to plausibly suggest that the debt in Plaintiff's account with Defendant was cancelled. Def. Mot. at 12. However, for the reasons stated above, the Court finds that Plaintiff has sufficiently alleged that Plaintiff's debt was cancelled, and thus that Defendant reported inaccurate information to the CRAs by reporting an unpaid balance. As a result, the Court DENIES motion to dismiss Plaintiff's CCRAA claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: December 4, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge